Filed May 12, 1891.

———————◆———————

No. 133.

## TAGGART, ADMINISTRATOR, *v.* TEVANNY.

DECEDENTS' ESTATES.—*Account Against.*— *Sufficiency.*—An account filed against a decedent's estate must contain all the facts necessary to show, *prima facie,* that the estate is lawfully indebted to the claimant; but it is sufficient if it apprise the defendant of the nature of the claim, the amount demanded, and contains enough substance to bar another action for the same demand. A complaint against an estate is put upon the same footing with a complaint in a cause originating before a justice of the peace.

SAME.—*Account for Work and Labor Performed.*—A complaint for work and labor, to withstand a demurrer, must show that the services performed were not merely voluntary, and must show an agreement to pay, or circumstances from which the same may be properly inferred; and the same is true of an account for such service filed against an estate.

SAME.—*Account Good in Part.*—*Demurrer.*—If any part of a claim filed against an estate is sufficient, the complaint or statement can not be held bad, because there are individual items which, when taken singly, would not amount to a good cause of action.

Taggart, Administrator, v. Tevanny.

SAME.—*Parties to Action.—Name of Administrator.—Summons.—Appearance.
—Waiver.*—When a claim is filed against an estate.it is not necessary to
issue a summons for the administrator, nor to formally make him a
party, nor to endorse his name on the claim as a defendant. Even
though such were necessary, a full appearance by the administrator is
a waiver of them.

SAME.—*Commencement of Action.*—When the claim has been filed and en-
tered upon the docket the action has been commenced.

SAME.—*Affidavit.—Sufficiency.—Credits.—"Justly Due and Owing."*—A state-
ment in the affidavit attached to a claim filed against an estate, " that
no payments have been made thereon except the credits therein given,
and that there are no set-offs against the same to " the affiant's " knowl-
edge," is equivalent to setting forth " all credits and deductions to which
the estate is entitled ; " and the statement that the balance shown " is
now justly due and owing," is the equivalent of saying that it " is justly
due and wholly unpaid."

SAME.—*Failure to Attach Affidavit to Second Paragraph of Complaint.*—Where
a second paragraph of complaint against an estate is filed in open court,
after leave obtained, the failure to verify it is an immaterial error if
the first paragraph has been duly verified.

CONTRACT.—*Specific Performance.—Quantum Meruit.*—If there has been an
agreement which, in all its essential features, amounts to an enforceable
contract, a party may sue, in some.instances, in case of a violation of
such contract, either for a specific performance or for damages for a
breach of the contract; but when the elements entering into such agree-
ment are such as do not amount to an enforceable contract, or one the
violation of which can not well be compensated in damages, and one of
the parties has, in good faith and in an attempt to carry out its pro-
visions, rendered services or delivered articles of value to the other
party, and such other party has accepted the same, although the exact
terms of the contract can not be legally enforced, the law will yet hold
the recipient of such services or articles liable for their value.

PRACTICE.—*Trial by Jury.— Waiver of Right to Insist that Court Should Try
Cause.*—A failure to object to a trial by jury is a waiver of a right to
insist that the cause should be tried by the court.

STATUTE OF LIMITATIONS.—*Continuous Contract.—Services.*—Where services
have been rendered under an agreement which does not fix any certain
time for payment or when the contract shall end, the statute of limita-
tions does not begin to run until the services have ended, such an agree-
ment being a continuous contract; but for services rendered before such
agreement, for which there is a liability under an implied contract, the
statute of six years is a bar, although the services rendered were con-
tinuous and uninterrupted.

COSTS.—*Decedent's Estate.— Unverified Paragraph of Complaint.*—The claim-
ant against an estate is entitled to recover his costs, if he is successful

in establishing his claim, notwithstanding the fact that by leave of court he has filed a second paragraph of complaint which is unverified.

From the Washington Circuit Court.

A. *Dowling, J. K. Marsh, H. Burtt* and *E. J. Taggart*, for appellant.

*J. G. Howard, F. B. Burke, L. T. Michener, S. B. Voyles* and *J. A. Zaring*, for appellee.

REINHARD, J.—The appellee filed in the office of the clerk of the Clark Circuit Court a claim against the estate of Elizabeth Wathen, the appellant's decedent. After the claim had been placed upon the issue docket, the claimant, in open court and by leave of court, filed a second paragraph of the statement of the claim. Thereupon the appellant moved the court to strike from the files each one of said paragraphs, which motion the court overruled. The venue of the cause was then, on application and affidavit of appellant, changed from the Clark Circuit Court to the Washington Circuit Court, where there was a trial by jury and a verdict in favor of the claimant for $19,250. Appellant then moved to vacate the proceedings in each of said circuit courts, and also moved for a new trial, both of which motions were overruled. The appellant then made motions in arrest of judgment, for a modification of the judgment and to tax costs, all of which were overruled. Proper exceptions were reserved to each ruling. Errors are assigned as follows:

"1. The complaint does not state facts sufficient to constitute a cause of action.

"2. The Clark Circuit Court had not jurisdiction of the subject-matter of the action.

"3. The Clark Circuit Court had not jurisdiction of the person of the appellant.

"4. The Washington Circuit Court had not jurisdiction of the subject-matter of the action.

" 5. The Washington Circuit Court had not jurisdiction of the person of the appellant.

" 6. The court erred in overruling motion to strike from the files the first paragraph of appellee's claim and complaint.

" 7. The court erred in overruling motion to strike from the files the second paragraph of appellee's claim and complaint.

" 8. The court erred in overruling motion to vacate verdict and proceedings in Washington Circuit Court.

" 9. The court erred in overruling motion for a new trial.

" 10. The court erred in overruling motion in arrest of judgment.

" 11. The court erred in overruling motion to modify judgment.

" 12. The court erred in overruling motion to tax costs against appellee."

We will take up these assignments and treat them in the order in which they are presented in the brief of the appellant.

The only manner in which the complaint, or claim, was assailed before verdict, was by the motion to strike the claim from the files; and the only ground of objection then assigned was that neither of the paragraphs was properly verified. The manner in which the complaint, or statement, of claim, has been assailed since the verdict is, first, by motion in arrest of judgment; and, second, by assignment of error that the complaint does not state facts sufficient to constitute a cause of action. For the sake of convenience and directness we will consider all of these objections together.

The specific objections which are now urged to the complaint, or statement, are these:

" 1. It does not aver that the services were rendered at the request of the decedent.

" 2. The item of fifty dollars advanced for the use of de-

cedent while she was under guardianship, is not a proper claim against the estate.

" 3.   The claim is not properly made out against the legal representatives of the decedent, and no proper defendant was named.

" 4.   The claim was not verified in the form prescribed by the statute.

" 5.   The second paragraph is subject to the additional objection that the statement shows upon its face that the pretended contract upon which it is predicated is void."

The first paragraph, or, perhaps, more properly speaking, the original statement of the claim, is in these words and figures :

" Estate of Elizabeth Wathen to Catharine Tevanny, Dr.

" To services rendered said Elizabeth Wathen, deceased, during her lifetime, as her general housekeeper, for nursing her and her son Athanaseus Wathen (who made his home with her) during all her sickness ; for attendance upon all their wants, and general care of household affairs from 1st day of April, 1861, to 17th day of July, 1888, a period of 326½ months, at $100 per month . . . . . . . . $32,650

For money advanced during last sickness of said Elizabeth Wathen, for her exclusive use and benefit during absence of her guardian . . . . . .     50
                                                        _____
                                                        $32,700

Above account is entitled to credits for money paid said claimant by said Elizabeth Wathen and John Adams, her guardian, in the sum of . . . . . . $5,000
                                                        _____
                                                        $27,700"

The question presented is, was this statement sufficient without the express averment that the services were rendered at the request of the decedent, or an agreement that they should be paid for ?

The statute provides that " No action shall be brought by

complaint and summons against the executor or administrator of an estate, for the recovery of any claim against the decedent; but the holder thereof, whether such claim be due or not, shall file a succinct and definite statement thereof in the office of the clerk of the court in which the estate is pending." Section 2310, R. S. 1881.

It has been decided that such a statement as the one contemplated under this section must contain all the facts necessary to show, *prima facie*, that the estate is lawfully indebted to the claimant or it will be held bad. *Walker* v. *Heller*, 104 Ind. 327; *Hathaway* v. *Roll*, 81 Ind. 567; *Pulley* v. *Perfect*, 30 Ind. 379; *Thomas* v. *Merry*, 113 Ind. 83; *Windell* v. *Hudson*, 102 Ind. 521.

Was the statement sufficiently "succinct and definite" to meet the requirements of the statute?

Ordinarily, a complaint for work and labor, to be sufficient to withstand a demurrer, must show that the services performed were not merely voluntary, and hence it must appear that there was an agreement to pay, or circumstances from which the same may be properly inferred. *Warring* v. *Hill*, 89 Ind. 497.

We think the statement contains language from which such an inference may properly be drawn. It is averred that the services were rendered, and for whom and by whom they were rendered, the nature of the services, the length of time they continued, and their value.

In addition to these averments in the body of the claim the affidavit attached to it contains the statement that the amount stated "is now justly due and owing" to the claimant.

It has been held repeatedly that the statement of claims contemplated by the statute is sufficient if it apprises the defendant of the nature of the claim, the amount demanded, and contain enough substance to bar another action for the same demand. *Davis* v. *Huston*, 84 Ind. 272; *Post* v. *Ped-*

*rick,* 52 Ind. 490; *Ginn* v. *Collins,* 43 Ind. 271; *Hannum* v. *Curtis,* 13 Ind. 206; *Lockwood* v. *Robbins,* 125 Ind. 398.

The case of *Ginn* v. *Collins, supra,* is much in point. There the statement of the claim was as follows: The estate of Elijah Collins, deceased, Dr., in account with George W. Collins, to board, services and maintenance in taking care of and providing for said Elijah Collins, and for care and provisions for him in his last illness to the time of his death, February 24th, 1870, said board, care and maintenance extending from October 10th, 1867, to February 24th, 1870, $1,200.

This statement is followed by a bill of exceptions in which the several items are specifically set forth. There was a demurrer to the statement of claim, for the want of sufficient facts to constitute a cause of action. The demurrer was overruled, and the court held that the statement contained enough to apprise the defendant of the nature of the claim, and the amount demanded, and to bar another action for the same demand. The court quoting approvingly from *Hannum* v. *Curtis, supra,* places these statements of claims against decedents' estates on a footing with complaints in causes originating before justices of the peace, where it has always been held that if such complaints contain the elements above named they will be deemed sufficient.

The appellant also urges an objection to the item of fifty dollars in the claim, which is alleged to have been advanced by the appellee for the use of Mrs. Wathen. The objection is not tenable. If any part of the claim is sufficient the complaint, or statement, can not be held bad, because there are individual items which, when taken singly, would not amount to a good cause of action. No authorities need be cited in support of a proposition so well settled.

We pass to the objection that the personal representative is not made a party to the action.

As we have already seen, the statute provides that there shall be neither complaint nor summons, but that the state-

ment shall be filed in the office of the clerk.    When this is done the claimant has done all the law requires of him.    It is not necessary to formally make the administrator or executor a party.    When the claimant states his claim the administrator or executor is made a party by operation of law, and he is bound to take notice of the filing of such claim. It is not to the point to say that there is no such person as "the estate of Elizabeth Wathen."    It has been held that the estate of a decedent *is* a person, and recognized as such in law (*Billings* v. *State*, 107 Ind. 54), but we do not place our ruling upon that ground.    We hold that it is not a prerequisite to the commencement of the cause of action that the name of the executor or administrator should be endorsed on the claim as a defendant.    When the claim has been filed and entered upon the docket, this is a commencement of the action.    Section 2318, R. S. 1881.    There is no pretence that this was not properly done in this case.

The appellant cites *Estate of Wells* v. *Wells*, 71 Ind. 509. That was a case where an administrator had himself filed a claim against his decedent's estate.    The court intimate in that case, if the question had been properly presented by an objection made below, it might have been held that the suit was not properly carried on.    This is the most that can be said for that case.    The remark of the court that " It would have been more formal if the plaintiff had filed his claim in his individual capacity against himself in his representative capacity, even if made with all the force and effect of a judicial decision, instead of as a mere *dictum*, could have no controlling influence here.    There is no informality in the naming of the parties shown in the record.    The mere omission from the claim of the name of the administrator does not amount to such, if the clerk has placed the action properly entitled upon the docket and it has been thus carried on ever since, which is true in the case before us.    Besides, the administrator made a full appearance to the action in the Clark Circuit Court, and there moved to strike from the files

the first and second paragraphs of the complaint. When that motion was overruled, he made an affidavit and application for a change of venue. Hence, if there ever was any merit in his objection, he waived his rights under the same. *Nesbit* v. *Long*, 37 Ind. 300.

We now proceed to the consideration of the next objection made to this paragraph of the claim, viz., that it was not properly verified.

The appellant insists that under the act of 1883 the statement, if not so verified, must be rejected.

We think, however, without expressing any opinion as to the effect of a failure to properly verify such a claim, that the verification was in substantial compliance with the requirements of the statute.

The affidavit attached to the paragraph we are now considering is as follows:

"*State of Indiana, Clark County, ss.:*

" Before the clerk of the circuit court of said county and State personally appeared Catharine Tevanny, who, being by me duly sworn, says that the above account in favor of herself against the estate of Elizabeth Wathen, deceased, is correct; that no payments have been made thereon except the credits thereon given; that there are no set-offs against the same to her knowledge; that the balance shown in said account, to wit, twenty-seven thousand seven hundred dollars, is now justly due and owing to said Catharine Tevanny, all of which she verily believes."

This affidavit is properly subscribed and sworn to.

The requirement of the statute is this: " The statement shall set forth all credits and deductions to which the estate is entitled, and shall be accompanied by the affidavit of the claimant, his agent or attorney, that the claim, after deducting all credits, set-offs and deductions to which the estate is entitled, is justly due and wholly unpaid." Elliott's Supp., section 385.

We feel that under a reasonable construction of this stat-

ute we are bound to hold the affidavit sufficient. We think the statement " that no payments have been made thereon except the credits therein given, and that there are no set-offs against the same to her knowledge," is equivalent to setting forth " all credits and deductions to which the estate is entitled ; " and the statement that the balance shown " is now justly due and owing," is but another mode of saying that it " is justly due and wholly unpaid."

We find no merit in any of the objections urged to the first paragraph of the claim. It should be borne in mind, too, that the complaint or claim was not assailed in the court below until after verdict, except by the motion to strike from the files, and this motion was predicated upon the sole ground that the claim was not properly verified.

We will now examine the objections to the second paragraph. It is contended that this paragraph is subject to the same objections as the first, and all that has been said in reference to the sufficiency of that paragraph may be applied to the second also. It is only necessary, therefore, to notice the objections not applicable to the first paragraph.

The second paragraph is not accompanied by any affidavit. It is followed immediately by the claimant's signature and verification and the jurat of the clerk. It is claimed by the appellee that the statements required to be in the affidavit are contained in the body of the claim, which is sufficient. Without passing upon this point we have come to the conclusion that the verification of the second paragraph was not essential. If, as is claimed by the appellant, the affidavit or verification of a claim goes to the question of jurisdiction of the subject-matter, which we do not decide, we think when the original claim or paragraph has been properly verified, as we hold it has been done in this case, the court acquires jurisdiction of the subject-matter, and any additional paragraphs filed afterward in open court, and with leave first had and obtained, are matters within the sound discretion of the court, and its acceptance of such additional

paragraph without verification furnishes no ground for the reversal of the judgment.

The next objection made by appellant to the second paragraph of the claim is stated in counsel's brief as follows:

" But the substantial and clearly fatal objection to the second paragraph of the claim is that the pretended promise upon which it rests is absolutely void for uncertainty."

It is insisted by appellee that this objection can not now be considered, there having been no attack upon the complaint before verdict except the motion to strike the paragraphs from the files, which motion was predicated solely upon the ground that the paragraphs were not properly verified, and that neither by a motion in arrest of judgment nor by an assignment of error that the complaint does not state facts sufficient to constitute a cause of action, can the sufficiency of the paragraphs be now determined in severalty. *Toledo, etc., R. W. Co.* v. *Milligan,* 52 Ind. 505; *Harris* v. *Rivers,* 53 Ind. 216; *Spahr* v. *Nicklaus,* 51 Ind. 221; *Kelsey* v. *Henry,* 48 Ind. 37; *Waugh* v. *Waugh,* 47 Ind. 580; *Louisville, etc., R. W. Co.* v. *Corps,* 124 Ind. 427.

On account of the magnitude of the amount involved in this controversy, however, and the consequent importance of arriving at a conclusion as nearly free from doubt as possible, we will proceed to dispose of the sufficiency of the second paragraph of the complaint. The paragraph is in these words and figures, leaving off the caption:

" The claimant in above entitled cause, first having obtained leave of court so to do, now files her second paragraph of complaint, and for cause of action states: That on the first day of April, 1861, she entered the family of Elizabeth Wathen as a domestic servant, and remained with her continuously until the first day of April, 1868, at which time this claimant notified said Eizabeth Wathen that she intended to quit her employment; that at that time the family of said

Elizabeth Wathen consisted of herself and her insane son, Athanaseus Wathen, only; that said Athanaseus Wathen was very much attached to this claimant, and she could do more with him and exercise greater influence over him than any one else; that said Elizabeth Wathen then stated to this claimant that if she (the claimant herein) would remain with her (said Elizabeth Wathen) until her (Wathen's) death, and care for and wait upon her, the said Elizabeth Wathen, and her son Athanaseus until the death of the said Elizabeth Wathen, she, the said Elizabeth Wathen, would make ample provision for this claimant at her death; that, relying upon that promise, this claimant remained with said Elizabeth Wathen until her death on the 17th day of July, 1888; that during this time this claimant had the constant care of said Elizabeth Wathen and her son Athanaseus; she exercised general supervision over the household affairs, contracted for and purchased the comforts and necessaries of life, did all the work about the house, and nursed and cared for said Elizabeth Wathen and her son Athanaseus during all their sickness; that during the last years of said Elizabeth Wathen's life she was of unsound mind, and in feeble condition mentally and physically; that said Athanaseus Wathen departed this life on the — day of ——, 1887; that said Elizabeth Wathen departed this life on the 17th day of July, 1888; that in her last will and testament she made no provision for the compensation of this claimant. This claimant says that the services rendered were worth the sum of one hundred dollars per month, being in all twenty-five thousand dollars. Said sum is entitled to credits for money had and received from said Elizabeth Wathen and her guardian, John Adams, in the sum of four thousand dollars. Said claimant says there is due and unpaid her from the estate of Elizabeth Wathen, deceased, the sum of twenty-four thousand dollars, for which she demands judgment, and for such other and necessary relief as the nature and circumstances of this case may require."

The argument of counsel against the sufficiency of this paragraph as the statement of the cause of action, proceeds upon the theory that it counts upon a specific contract, and that the relief asked for is in damages. If there has been an agreement which, in all its essential features, amounts to an enforceable contract, a party may sue, in some instances, in case of a violation of such contract, either for a specific performance, or for damages for a breach of the contract. When the elements entering into such agreement are such as do not amount to an enforceable contract, or one the violation of which can not well be compensated in damages, and one of the parties has, in good faith and in an attempt to carry out its provisions, rendered services, or delivered articles of value, to the other party, and such other party has accepted the same, although the exact terms of the contract can not be legally enforced, the law will yet hold the recipient of such services, or articles, liable for the value of the same.

A number of authorities have been cited to the point, and it is ably and ingeniously argued that in cases where specific performance is asked for, or where the action is for damages for a breach of the contract, the terms of such contract must be definite and certain, and the contract itself must be distinctly averred and proved. In such cases a failure to show a definite agreement will render the pleading bad. *Stanton* v. *Miller*, 58 N. Y. 192; *Wright* v. *Wright*, 31 Mich. 380; *Carlisle* v. *Fleming*, 1 Harr. (Del.) 421; *Mundorff* v. *Kilbourn*, 4 Md. 459; *Izard* v. *Middleton*, 1 Desaus. 116.

It may be conceded that, if the paragraph in hand proceeded upon the theory of a complaint for specific performance or an action for damages for the breach of the contract, its sufficiency as a cause of action would be open to serious doubt. In such cases, where the claim is that the decedent agreed to convey land or deliver personal property of the value of more than fifty dollars, the question of the statute

of frauds sometimes enters in and becomes a controlling element.

*Wallace* v. *Long*, 105 Ind. 522, is a leading case of the kind, and modifies some of the doctrines in the earlier cases upon this subject. In that case a claim was filed by the guardian of a minor girl against the estate of her late employer. The latter had agreed orally that if the girl would live with and render certain services for the decedent and her husband they would make her their heir, and at their death, or the death of the survivor, would will her the entire estate of which they were possessed, consisting of real estate and personal property worth more than fifty dollars. The girl had performed a portion of the services when the parties died, and the action was for damages for a breach of the contract. The court held the action for damages on the special contract would not lie, as the agreement was within the statute of frauds. But in that case they expressly decide that the remedy was on a *quantum meruit.* MITCHELL, J., in delivering the opinion of the court, among other things, says : " That the evidence in this case tends to support the view that it was the purpose of the intestate to make provision for the plaintiff's ward by a will, may be conceded, but as the agreement to do so was never manifested in writing, signed by her, and as it involved an agreement for the sale of real estate, and for the transfer of personal property exceeding in value fifty dollars, such agreement was subject to the operation of the statute of frauds, equally with all other agreements for like sales. Because the agreement was not withdrawn from the operation of the statute by part performance, it can not be specifically enforced, neither can it be the foundation of an action for damages. Browne Stat. of Frauds, section 124.

" It does, however, serve to rebut any presumption which otherwise might have obtained, that the services rendered were to have been gratuitously performed, or that they were performed under the mere expectancy that the intestate would

leave the plaintiff's ward a legacy. She is, therefore, entitled to recover the value of her services."

The agreement may be within the statute of frauds, or it may be so uncertain as not to be capable of enforcement. But it does not follow, by any means, that the party who performed the services under such an arrangement is wholly without remedy. The case from which the above quotation was made is very instructive upon this subject, and as we have said is a leading one of a line of recent decisions which make a material modification of the doctrine by force of which it had been ruled that agreements of the kind we are here dealing with might be specifically enforced or damages recovered for their violation. It was in the course of making these modifications that the courts felt called upon to speak of the necessity of "holding a tight rein" in dealing with such cases, the allusion being to those cases, of course, in which there was asserting itself a growing tendency to change the rightful transmission of estates by means of parol testimony and other means of doubtful legal propriety. There was a necessity for "holding a tight rein" in those cases, which can not exist where there is simply a lawful effort to recover the actual value of services rendered, measured, not by the standard of the estate which was promised to be conveyed, or the personal property which was to be transferred, but by the price which such services command in the market. If with the law as now construed there is still some disposition by juries to deal too liberally with the estates of decedents, the fault must be laid to those whose duty it is to find the facts rather than to the rules of the law as thus interpreted, and it is but another instance of the many where a good law is sometimes used for the accomplishment of a bad end. But to say that such claims are not favored by the law, as argued by appellant's learned counsel, would be saying that the law did not favor the payment of honest debts.

If the allegations of the paragraph were confined to the statement of this special agreement, and a recovery was predicated upon it alone, without any averment as to the services performed and the nature and value thereof, a different question might arise. But as it is, the pleading objected to is in the nature of a complaint for work and labor on a contract partly expressed and partly implied, the nature and value of which will be ascertained with reference to the agreement declared upon, and which is, at least, an element in the transaction between the parties.

We think the second paragraph of the complaint, or claim, was a sufficient statement of a cause of action on a *quantum meruit.*

As to the third, fourth, and fifth assignments of error, appellant says " they may be considered together, and the points intended to be presented by them are that the failure to make any defendant to the claim, or action, rendered the proceeding ineffectual for any purpose, and that the failure to verify the claim * * * deprived the court of jurisdiction."

These objections having been disposed of by what has already been said, it is unnecessary to give them further notice. The same may be said of the seventh and eighth specifications.

The ninth assignment presents the question whether the court correctly overruled the motion for a new trial.

The first cause assigned in this motion was that the court erred in submitting the cause for trial to a jury instead of the court.

The record fails to show that any objection was made in the court below to a trial by jury, and it may, therefore, be regarded as having been waived.

The second cause for a new trial was that of permitting the jury to consider the second paragraph of the complaint, which was not verified, etc. This objection to the second paragraph has been disposed of under another head.

The third ground for a new trial was alleged error in the

assessment of the amount of the recovery. We will consider this when we have disposed of the other remaining questions involved in this case.

The next ground upon which a new trial was claimed was the insufficiency of the evidence to sustain the verdict.

If there was evidence tending to support the verdict of the jury, this court will not undertake to weigh that evidence and decide where the preponderance lies. The jury, in determining the value of the services, must necessarily be allowed a large latitude for the exercise of their judgments, which may be based upon their experiences and observations as well as upon the testimony of the witnesses. Services in one family and by one servant may be worth one price, while services in a different household and by a different servant may have quite another value. In the case of *Wallace* v. *Long, supra,* a case in many respects similar to this, the court laid down the rule that in determining the value of such services as are here claimed for, three things may be considered :

1. The situation of the parties.
2. The nature of the services performed.
3. The presence and society of the claimant.

The evidence tends to show that Elizabeth Wathen, the decedent, was the owner of an estate of the value of more than four hundred thousand dollars. The only family she had was her son Athanaseus, who was likewise the owner, in his own right, of a large amount of property. At the time of what is termed the agreement the decedent was about seventy years of age, feeble in body and mind. She eventually became insane. Her son, who was then about fifty years old, was likewise insane, and lived until December 31, 1887. He had been a physician and well educated. After he became insane his mother kept him at home with her, and although he was not at all violent or dangerous he was an object of more or less care and attention constantly. The decedent, shortly after the time of what the claimant

contends was an agreement, arrived at a condition, both mentally and physically, when she was not able to give him the proper care and attention. For some ten or twelve years before her death Mrs. Wathen herself was an object of more or less care, and thus she required the services of the claimant for herself and son almost constantly. The claimant cared for her and her son in the manner required, not only in the daytime, but also at night when the decedent was at times most troublesome and whimsical, though never dangerous or violent. The claimant was about to be married, and in 1866 was about to leave the decedent for the purpose of assuming this new relation, when, at the solicitation of the decedent, and under a promise that she would provide for her as long as she lived better than any man could do, and that at her death she would make ample provision for her, she broke the engagement and continued to remain in the service of the decedent until after her death. Her son died some time before she did.

During the entire time she lived and worked in the family of decedent after the agreement, she had the absolute control and management of the household, and of Mrs. Wathen and her son as long as they were both living. She performed most all the labor in and about the house, purchased all the supplies, managed and handled the finances, collected the notes, and kept the deposit account of the family in bank. Her work consisted partly in keeping the house in a style suitable to the decedent's rank and condition, waiting on the table, assisting Mrs. Wathen and her son in dressing, receiving visitors, making fires, keeping the rooms in order, and, in short, exercising complete control over the household and its affairs. She remained in Mrs. Wathen's employment up to the time of her death. She was compelled, necessarily, to remain in the house with Mrs. Wathen the greater portion of the time.

The evidence tends to show that the latter was very much attached to the claimant, and attended faithfully to her every

want.   It also tends to show that no one else, as a rule, assisted in bestowing these offices of care and attention.

The testimony of several witnesses proved that the value of claimant's services was one hundred dollars per month, which is the largest amount fixed for such services.   No one can for a moment claim that these services were not worth more than those of an ordinary domestic girl, without any special cares and responsibilities.   The great variety of the services, the manner in which they were performed, the station in life of the parties, the attachment of the decedent to the claimant, the apparently satisfactory manner in which the claimant managed the entire affairs of these afflicted people, furnished the witnesses, as well as the jury, a basis for placing upon the services of claimant a value far above that of an ordinary family servant, and we can not say that the jury exceeded its authority, under the evidence, in fixing the value of her services at $100 per month, which was the highest value proved.   We can not, therefore, disturb the verdict on account of the insufficiency of the evidence.

Some complaint is made by appellant that he was not given the benefit of the six years' statute of limitations.   But where, as in this case, services have been rendered under an agreement which does not fix any certain time for payment, or when the contract shall end, it would amount to a continuous contract, and the statute of limitations would not begin to run until the services had ended.   *Littler* v. *Smiley,* 9 Ind. 116.

Objections were made and are urged here to some of the instructions given to the jury.   We have examined these instructions, and find them in substantial accord with the principles of law upon which this decision is based, and which have been referred to in the course of this opinion.

The motion in arrest of judgment we also think was properly overruled.   The motion to modify the judgment only presents in another form the objection that the administrator was not made a party.

The court committed no error in refusing to tax costs to the appellee.

We have now disposed of all the alleged errors except the cause assigned for a new trial that the verdict was excessive, and it presents for our consideration a question of more difficulty.

As we read the evidence, none of the witnesses place the time from the agreement to the death of Mrs. Wathen at more than sixteen years or one hundred and ninety-two months. As we have seen, the highest estimate placed upon the value of the services was $100 per month, and this was the amount claimed in the complaint, which wolud make the total value of the services $19,200. Add to this the item of $50, which we are inclined to think the evidence tends to show was for necessaries furnished in defraying the funeral expenses of decedent, and is, therefore, a proper charge against the estate, and we have a total amount of $19,250. From this should be deducted the amount of $5,000, admitted to have been paid, and this leaves a balance due claimant of $14,250. In other words, the verdict was for $5,000 more than it should have been in any view of the evidence.

Counsel for appellee fully concede in their brief that the length of time which the evidence showed the claimant had served Mrs. Wathen, under their arrangement, was sixteen years, and we are not directed to the evidence of a single witness who testified to a longer period. It can not be said that the jury allowed the claimant anything for services prior to the time of the agreement. Most certainly the statute of limitations has barred any claim arising previous to the beginning of the arrangement which forms a basis for the claimant's recovery. No special plea would be necessary to entitle the appellant to the benefits of the statute.

We are of the opinion, therefore, that the amount of recovery named in the verdict of the jury was excessive.

If the appellee will within sixty days from this date enter

a remittitur of $5,000 of the claim, and pay the costs of this appeal, the judgment will be affirmed; otherwise the judgment is reversed, at the costs of the appellee, and the cause remanded for a new trial.

Filed May 1, 1891.