No. 85.

KNIGHT, ADMINISTRATOR, v. KNIGHT.

DECEDENTS' ESTATES.—*Claim Against.*—*Sufficiency as a Pleading.*—*Requirements of.*—Claims against decedents' estates are not to be tested by the general rules of pleading, but are on the same footing as complaints in actions before justices of the peace, and are sufficient if they apprise the defendant of the nature of the claim, the amount demanded, and would operate as a bar to another action for the same demand.

SAME.—*Services in Family of Decedent.*—*Promise to Provide for.*—*Presumption.*—A promise made by a decedent, to one rendering services in his family, to provide for her out of his estate, though not enforcible, is sufficient to rebut a presumption that the services were rendered gratuitously.

SAME.—*Recovery for Services.*—*When Allowed.*—Where one renders services for another under a contract express or implied, and the master dies leaving the services unpaid for, the servant is entitled to recover the value of the services out of the decedent's estate.

DEMURRER.—*Complaint.*—*Overruling Demurrer to Bad Paragraph.*—*When not Reversible Error.*—It is not reversible error to overrule a demurrer to a bad paragraph of complaint, when it appears from answers to interrogatories that the verdict was based on another good paragraph.

ASSIGNMENT OF ERROR.—*Matter Improperly Assigned.*—*Overruling Motion.*—*Cause for New Trial.*—The overruling of a motion to require the jury to retire to the jury-room and answer interrogatories more fully is not good as an assignment of error, but should be assigned as a cause for a new trial.

VENIRE DE NOVO.—*When Proper.*—A motion for a *venire de novo* can not prevail unless the verdict or finding is so defective that a judgment can not be rendered thereon.

EVIDENCE. — *Decedents' Estate.* — *Action for Services Rendered.* — *Value of Estate.*—*When Admissible.*—In an action against a decedent's estate for services, where the claim or complaint is in two paragraphs, one on account and the other on a promise by the decedent to provide for such services out of his estate, it is not error to admit evidence as to the value of the estate, when such evidence is confined by instruction to the paragraph based upon the promise to provide for the services out of his estate.

SAME.—*Declarations of Deceased Person.*—*Claim Against Estate for Services.*—*Presumption.*—The declarations of a decedent to the effect that he will provide out of his estate for certain services which are being rendered for him, are competent in evidence to rebut the presumption that such services were gratuitously rendered.

STATUTE OF LIMITATIONS.—*Continuous Services.*—*Time of Payment not Fixed.* —*When Statute will Begin to Run.*—Where services are continuous, and there is no time fixed for payment or when the contract shall end, the statute of limitations will not begin to run until the services are ended.

VERDICT.—*Excessive Recovery.*—That the amount of recovery under the verdict is not excessive, see opinion.

From the Grant Circuit Court.

*A. Taylor*, for appellant.

*W. G. Sayre*, for appellee.

DAVIS, J.—The appellee filed a complaint in the nature of a claim, in the Wabash Circuit Court, against the estate of John L. Knight, deceased. The cause was, by change of venue, transferred to the Grant Circuit Court. Appellee recovered judgment in the court below, for $4,350.

The complaint or claim of appellee is in two paragraphs, as follows:

"*First Paragraph.* The estate of John L. Knight, in account with Sabrina Knight.

### DR.

To services as housekeeper for him, from
  1871 to 1880, at $100 per annum ..... $900.00

### CR.

By cash, in 1892...............................       $200.00
To services as housekeeper and nurse,
  from 1880 to 1884 inclusive, at $365.00
  per year....................................$1,825.00

               $2,725.00   $200.00

To services as housekeeper and nurse,
  from 1884 to his death, on the ——
  day of ——, 1892, at $2.00 per
  day......... .............................. 2,190.00

  Total......................................$4,915.00
Credit.......................................... 200.00

  Balance due ...........................$4,715.00

" *Second Paragraph.* The claimant Sabrina Knight now states her claim against said estate in another form. John L. Knight was a widower, and the claimant, in 1871, was the widow of Johnson Knight, a son of John L., and the mother of one child, a son. Then when, or shortly after, her said husband died and her child was yet living, the said John L. Knight requested her to become his house-keeper, which she did, and so continued until the death of her said son, which occurred in the year 1880, and that as part payment for her said services he paid her two hundred dollars and no more; that, after her said child's death, the said John L. Knight having become debilitated by age and disease again requested her to remain his house-keeper, and his attendant and nurse, and that in consideration for so doing he would provide for her the share of his estate that would have gone to her said husband or child had they or either of them lived; that, in accordance with said request, she did so remain and gave to him all the waiting and watching and care required for his comfort, until he died, which was in the early part of the year 1888; that he left surviving him two children only, who are his only heirs, and an estate, as she is informed and believes, of the value of fifteen thousand dollars; that he died intestate, making no provision for her as aforesaid, and, therefore, she is entitled to have against the estate allowed her the sum of five thousand dollars."

A demurrer was overruled to the second paragraph, and this presents the first question for our consideration.

It is insisted by counsel for appellant that this paragraph does not state facts sufficient to constitute a cause of action, and that the overruling of the demurrer constitutes reversible error, while, on the part of appellee, counsel contend that the paragraph was sufficient to withstand the demurrer, but should they be mistaken in this, that it affirmatively appears in the record that the verdict and judgment were based on the first paragraph, and,

therefore, in any event the error, if any, in this respect, was harmless.

It has been decided that statements of claims against decedents' estates are "on a footing with complaints in causes originating before justices of the peace, where it has always been held that if such complaints" contained enough to apprise the defendant of the nature of the claim, and the amount demanded, and to bar another action for the same demand, they will be held sufficient. *Taggart, Admr.*, v. *Tevanny*, 1 Ind. App. 339, and authorities there cited.

A claim against an estate does "not require a regular complaint under the ordinary rules of pleading, but merely a succinct statement of the claim." *Post, Admr.*, v. *Pedrick*, 52 Ind. 490, and authorities cited; *Culver, Admx.*, v. *Yundt*, 112 Ind. 401; *Clifford* v. *Myer*, (Ind. App.) 33 N. E. Rep. 127.

In the second paragraph in this case it is averred that appellee rendered the services at the request of the deceased, in consideration of an agreement on his part that he would provide for her the share of his estate that would have gone to her husband or child.

The promise to provide for her, out of his estate, the share that would have gone to his son at his death, could not be enforced; but such promise was sufficient to rebut any presumption which otherwise might have obtained, that the services rendered by appellee were gratuitously performed; and on performance of the services, under the circumstances stated, a cause of action accrued in her favor to recover the value of the services rendered. *Wallace, Admr.*, v. *Long, Guar.*, 105 Ind. 522; *Taggart, Admr.*, v. *Tevanny, supra.*

The indefinite and uncertain character of the promise in such cases does not deprive the party who has performed the services of all remedy.

Judge Reinhard, speaking for the court in *Taggart, Admr.*, v. *Tevanny, supra*, tersely expresses the law on this point, as follows :

" The agreement may be within the statute of frauds, or it may be so uncertain as not to be capable of enforcement. But it does not follow, by any means, that the party who performed the services under such an arrangement is wholly without remedy."

The demurrer in this case admits, that appellee became housekeeper of John L. Knight in 1871; that he became debilitated by age and disease ; that she watched over him, waited upon him, and cared for him as nurse, attendant and housekeeper, until his death, in 1888 ; that her services were so performed at his request, and in consideration of his promise to provide for her one-third of his estate ; and that he died without making any provision for her, leaving an estate worth $15,000.

The allegations relative to the promise, the performance of the services in consideration of such promise, and the entire failure of the decedent to comply with his promise, in connection with the other averments, constitute sufficient facts to uphold the claim, unless the failure to aver the value of the services is a fatal omission.

In the case of *Frost* v. *Tarr*, 53 Ind. 390, the substantial averments in the first paragraph of the claim were, in many respects, analogous to the facts stated in the second paragraph under consideration. There was no averment in that case as to the value of the services rendered, and yet the Supreme Court held the paragraph good on demurrer. In that case the Supreme Court held that the recovery "may be measured by the value of the portion which was promised." The decision was modified in *Wallace, Admr.*, v. *Long, supra*, where it was decided that the measure of the recovery in such cases was the value of the services rendered. In the claim filed in *Wallace, Admr.*, v. *Long, supra*, it does not appear that there was

any averment in regard to the value of the services rendered. The sufficiency of the pleading does not appear to have been decided by Judge Mitchell in that case. The judgment of the lower court was reversed because the damages had been assessed on the basis of the value of the property or estate promised, and not on the value of the services rendered.

If governed by the ordinary rules of pleading, the second paragraph would evidently not be sufficient, and whether under the provision of the statute, and the liberal rules enunciated by the Supreme and Appellate Courts relative to pleadings in claims against estates, and in actions before justices of the peace, the second paragraph is sufficient, need not be determined in view of the conclusions we have reached on other questions involved in this appeal.

We will proceed, however, in this connection to consider whether if this paragraph was held to be insufficient, available error appears in the record on account of overruling the demurrer thereto. As was well said by this court in a recent case in which a demurrer was overruled to one paragraph of complaint which could not be upheld, "but it does not necessarily follow that the error must result in reversing the judgment." *Taylor* v. *Wootan,* 1 Ind. App. 188.

In discussing the question in that case, the court said: "The jury answered thirty-five interrogatories, covering about every fact in issue, and from these it is clear that in reaching the general verdict they adopted the theories of liability declared upon in the first and second paragraphs exclusively, so we must hold the error harmless."

The second paragraph in this case was based upon a specific contract, in substance and to the effect, that in consideration of the services therein mentioned, the said John L. Knight would provide for her one-third of his estate.

Interrogatories, thirty-four in number, were submitted to the jury, at the request of appellant, two of which, with the answers thereto, we set out.

The second interrogatory is as follows:

" If, at the commencement of plaintiff's services as such housekeeper, there was any contract between her and the decedent as to the amount she should receive for her services as housekeeper, state fully and specifically, what was the contract?

"*Answer.*—The evidence does not disclose any specific contract."

The thirty-first interrogatory is as follows:

" If, after the plaintiff became the housekeeper of the decedent, any contract or agreement was made between her and him by which he undertook to compensate her for her said services, state fully and specifically the terms of such contract and agreement, and when made?

"*Answer.*—There was no specific contract."

The jury find there was no such contract. The interrogatories and answers thereto certainly establish this proposition. The jury do not say 'there was neither an express or implied contract, but they do find that the specific contract attempted to be set up in the second paragraph was not established by the evidence. The verdict of the jury was, therefore, evidently and necessarily predicated on the first paragraph of the claim.

In this connection we will notice the objection made by counsel for appellant, that the second paragraph was not supported by the necessary affidavit. There is an affidavit of appellee, in due form, copied into the record immediately following the second paragraph, in which she swears: " That the (claim) account hereto attached is just and true; that there are no offsets thereto other than therein stated, to her knowledge, and that the same remains wholly due and unpaid."

If the affidavit should be construed as referring to the first paragraph only, this would not be cause for demurrer. Section 2310, R. S. 1881; Elliott's Supp., section 385; *Taggart, Admr.,* v. *Tevanny, supra.*

Our conclusion is that in any view of the case the overruling of the demurrer is not available error on this appeal.

The second error assigned relates to the overruling of appellant's motion to require the jury to return to their room and make fuller answers to the interrogatories.

This is not a good assignment of error, but is properly a cause for new trial, and will be considered hereafter.

The third assignment of error brings in question the ruling of the court on appellant's motion for a *venire de novo.* There was no error in overruling this motion. The practice is well settled that a motion for a *venire de novo* will not be sustained unless the verdict or finding is so defective or uncertain that a judgment can not be rendered thereon. The verdict in this case was clear and certain. *Chicago, etc., R. R. Co.* v. *Barnes,* 2 Ind. App. 213.

The fourth error is that the court erred in overruling appellant's motion for judgment in his favor on the second paragraph of statement of the claim.

The answers to the interrogatories disclose the value of the services rendered by appellee during each year, which, in the aggregate, equals the amount stated in the general verdict. It appears that appellee was entitled to judgment, on the verdict on the first paragraph of the complaint, for the full amount found to be due her. There would have been no available error in rendering judgment for appellant on the second paragraph and for appellee on the first paragraph, and the overruling of this motion was not—under the circumstances, on the theory that the second paragraph was bad—prejudicial to appellant. In any view of the case, as disclosed by the record, appellant has not been injured by this ruling.

The fifth error complained of is that the court erred in overruling appellant's motion for a new trial.

Numerous causes are assigned why a new trial should have been granted.

Before proceeding to discuss the various reasons relied upon by appellant in the motion for a new trial, we desire to call attention to some of the material facts in the case, which the evidence introduced on the trial tended to prove. The said John L. Knight was, in 1871, a widower, the father of three children, one of whom died about that time, leaving the appellee surviving him as his widow; another son afterwards married and lived separate from his father, and his daughter lived in Brooklyn, New York. In 1871 the appellee became his housekeeper, nurse and attendant, and continuously thereafter lived with and cared for him until his death, in 1888. His children did nothing toward caring for, waiting upon or nursing, him, and visited him at occasional and infrequent intervals, and then, as a rule, only when sent for by their father. He was, in 1871, afflicted with shaking palsy, which constantly grew gradually worse, and on account of this disease, and other disorders, he could only get about with great difficulty, in a shuffling way, for years before his death. He became weak, decrepit and helpless, both mentally and physically; he could not feed, dress or undress himself, and he could not get in or out of bed without aid, and frequently he did not have control over his urinary organs or bowels, and he would often befoul his clothes, his bed, and his person. The appellee fed him, dressed him, undressed him, assisted him to bed, helped him to get up, washed his clothing, bathed his person, and kept his house alone, with the exception of occasional assistance. She did not live with him and render the services in question as a member of his family merely, but he said to her, and to others, that his children could not and would not care for him as she did; that he could not get along without her;.

that he had promised her the share in his estate which her husband would have received had he lived, and at one time he was negotiating for the purchase of property for her of the value of $3,000, which he intended to have conveyed to her as a home for her.

We can not, in the limits of this opinion, set out all the facts and circumstances relative either to the character, extent and value of the services rendered by appellee, or which tend to prove a promise on the part of John L. Knight to compensate her therefor.

Suffice it to say, there was abundant evidence introduced on the trial tending to establish the proposition that he intended she should be paid, either before or after his death, for the services performed by her, and that she, in reliance on such promises, remained with him, and rendered the services for which she seeks to recover in this action.

The evidence, in many material respects, is not contradictory.

The first question presented by the motion for a new trial, and discussed by counsel for appellant, relates to the admission of certain evidence, which is made the basis of the first, second, third and fourth causes in the motion.

This evidence consists of the inventory of the estate of the decedent, the testimony· of William R. Snavely as to the value of certain real estate, and the testimony of Thomas McName relative to the value of the real estate owned by decedent when he died.

In this connection we quote the twelfth instruction given by the court:

" 12. The evidence as to the value of the estate of Judge Knight applies only to the facts stated in the second paragraph of the complaint, and if no contract has been proved under that paragraph, the evidence as to the value of the estate need not be considered by you."

In view of the fact that the jury found that such con-

tract was not proved, and the instruction by the court in express words that "the evidence as to the value of the estate need not be considered" by them, in that event it would appear that if there was any error in the admission of the evidence, such error was cured, but aside from this instruction standing alone, does the admission of such evidence, under the circumstances, constitute reversible error? In this connection it should be borne in mind that the instructions of the court in this case when considered and construed together as an entirety, are, on this question, in substance and to the effect, that the measure of damages, in the event appellee should recover, was the value of the services rendered by her, and not the value of the property or estate promised.

In the case of *Taggart, Admr.*, v. *Tevanny, supra*, evidence was introduced tending to show that the decedent "was the owner of an estate of the value of more than four hundred thousand dollars."

And in *Wallace* v. *Long, supra*, the court said that "in estimating the value of the services regard should be had to the situation of the parties."

All that is necessary for us to decide, and all we do decide on this question, is that under the circumstances of this case, and the instructions of the court, there was no available error in admitting this evidence. Complaint is made of the admission of testimony of the witness Snavely, as to a conversation between the decedent and appellee, in which the decedent said: "You know I have promised you Charley's share."

There was no error in this. The declarations of the decedent were competent in behalf of appellee, on the issue tendered by the first paragraph, as tending to prove that she was not rendering the services in question as a gratuity, and that the decedent did not so regard her services.

Exceptions were properly reserved to each of the in-. structions given, numbered two, five, eight, nine, ten and fourteen, which, together with the fifteenth and sixteenth,. we set out in full:

"2. The second paragraph of the claim rests upon an alleged contract between the plaintiff and the decedent John L. Knight, under which it is averred that John L. Knight was disabled by age and disease; and that he made. a contract with her that she should remain at his home, and be his housekeeper, and care for him, and render him service, and he would make provision for her in his will, a share equal to that which would have been the share of her husband, or which her son would have inherited from his estate; and that, under such agreement, she did remain and be his housekeeper, and took care of him and rendered service from that time until his death."

"5. The claim or complaint in this suit sets up two affirmative propositions. First, that the plaintiff rendered service for John L. Knight in his lifetime, at his request, and that such services were of the value of $4,905; and, second, that the plaintiff and John L. Knight made a verbal agreement under which the plaintiff was to become the housekeeper for the decedent, and to render service to him in taking care of him, etc., and that in consideration of such services, the deceased John L. Knight, promised and agreed with her that he would bequeath to her by his will such share of the estate as her husband or her son would inherit if living, and which is averred to be worth $5,000. The facts averred in these two paragraphs are affirmative facts and averments, and are denied by the answer. Before the plaintiff can recover [on] the first count, she must support her averments in that paragraph by a preponderance of the evidence; and the same is true of the second. If the evidence is evenly balanced as to the averments in one paragraph, there can be no recovery on that one. If evenly balanced as to both, then there can

be no recovery on either, because in such case there would be no preponderance of evidence in favor of the plaintiff.

" 8.   If you find from a preponderance of the evidence that the plaintiff (Sabrina E. Knight) and John L. Knight, entered into a verbal contract, under which the plaintiff agreed and promised to labor for John L. Knight in the capacity of housekeeper or otherwise for him, and that, in consideration for such labor, he, John L. Knight, agreed and promised to compensate her in his will, for such services, it was a valid contract and upon a sufficient consideration; and if you further find from the evidence that the plaintiff did render service for John L. Knight, under such contract, he became liable to her for the reasonable value of the same, and his administrator will be liable for whatever sum her services are shown by the evidence to be worth, if he made no will, or made one and made no provisions for the payment of the plaintiff; and, in such case, the statute of limitations will not begin to run until the death of John L. Knight."

" 9.   Where all the items of an account are on one side, the fact that some of them are within six years before the commencement of the action will not take the others of longer standing out of the operation of the statute of limitations, and in . such case only the items of account that have accrued within six years can be recovered for. But it is otherwise when the accounts are mutual between the parties.   But when the items of an account are for work and labor done continuously upon an entire contract, if one of the items be within the period of limitation, then all are saved."

" 10.   Against an account for work and labor done under an agreement for payment not specified at what time such payment should be made, or how long such labor should continue or be performed, the statute of limitations does not commence running until the labor ends.   Wherefore, if the jury believe from the evidence that the plaint-

iff Sabrina E. Knight, performed labor for the defendant's intestate, John L. Knight, under an agreement to be paid therefor, without specifying at what time such payment should be made, or how long such labor should continue or be performed, then the statute of limitations would not commence running until such labor was ended."

"14. If you believe from the evidence that the plaintiff, at the request of John L. Knight, performed for him labor and service, the law implies a promise on his part to pay for the same what it was reasonably worth."

"15. If you believe from the evidence that the plaintiff performed labor and rendered service for the deceased John L. Knight, as his housekeeper, and worked for him in and about his house in taking care of the same and taking care of him, and that John L. Knight knew she was rendering such service, and that the same was done with his consent, then he would be liable to pay her for her services such sum as they were reasonably worth, to be determined by the evidence."

"16. It is the law that where one person lives in, and as one of, the family of another, being provided with food, clothing, lodging, and care as one of the family, and doing labor and work for such other person, and without any contract· relating to it, such person can not recover for labor performed, nor can the other recover for board, lodging, clothing, etc. In such a case, an action can not be maintained by either party. If you find from the evidence that the plaintiff Sabrina E. Knight, during the time named in the complaint, lived in the family of John L. Knight, as one of the family, and was being provided for by him, as one of his family, and without any contract for wages or compensation for her services, or any understanding between them to that effect, then she can not recover for such services and labor."

The services in this case were continuous for nearly twenty years. Where no certain time is fixed for pay-

ment, or when the contract shall end, or where, as in this case, the evidence tends to support the theory that compensation was to be made to appellee at the death of Knight, if not before, the contract, whether express or implied, should be considered and treated as a continuous one, and the statute of limitation would not begin to run until the services were ended. *Taggart, Admr.,* v. *Tevanny, supra; Frost* v. *Tarr, supra; Shoonover, Exec.,* v. *Vachon,* 121 Ind. 3.

The instructions on this question, when considered as a whole, were not unfavorable to appellant.

The instructions relative to the fact that appellee was the daughter-in-law of the decedent and lived with him and as a member of his family for nearly twenty years before his death, when considered together, are as favorable to appellant as the law would warrant.

The presumption which exists in such cases, that neither party intended to receive compensation for service or board, may be rebutted by proof of an express contract, or by facts and circumstances which exclude the intention that services so rendered were gratuitous, and raise an inference that compensation was intended; and under such circumstances, when shown, the law will imply a contract, and require payment. *Hill* v. *Hill,* 121 Ind. 255 (260); *Smith* v. *Denman,* 48 Ind. 65.

We have read the instructions carefully, and in view of the answers of the jury to the interrogatories, when considered in connection with the fact that the court stated to them, in reference to the alleged special contract mentioned in the second paragraph, that if they found from a preponderance of the evidence, that John L. Knight had made the promise to compensate her, and if she performed the services, and he made no provision by will or otherwise to pay her for such services, then "he became liable to her for the reasonable value of the same," we are not able to see why or how appellant was or could have been injured or prejudiced thereby.

Appellee was certainly entitled to prove, under the first paragraph, all of the circumstances surrounding the services performed by her. She had the right to prove thereunder the services rendered, the promises, if any, made by the decedent to compensate her therefor. If the second paragraph had been withdrawn either before or during the trial, all the evidence which was or could have been introduced thereunder was admissible under the first paragraph. It was not necessary, in the statement of her claim against the estate, to plead the contract attempted to be set up in the second paragraph, to entitle her to recover for the value of the services rendered. There was no question of specific performance involved. The only right she had, in any view of the case, was to enforce payment for the value of the services rendered by her. In the absence of the second paragraph, it would have been proper, under the statements contained in the first paragraph, for the court to have instructed the jury that if appellee had performed the services mentioned under either an express or implied promise on the part of said John L. Knight that he would compensate her therefor by will or otherwise, and that he died without paying her or making any provision for her, she was entitled to recover the value of the services so rendered. If she rendered the services as a member of his family without expectation of compensation, or if she had been paid for her services, she would have no right of action. These were all questions to be considered and determined by the jury, and they were properly submitted to the jury under the instructions of the court.

In conclusion on this subject, we are of the opinion, when the instructions given—including those hereinbefore set out, as well as the others which are not copied herein, —are considered and construed together as an entirety, that the instructions do not assume to state the facts or invade the province of the jury, and that they are not uncertain, confusing, or contradictory, and, although there

may be. some inaccuracies of expression, and their construction might be improved, the instructions were not calculated to mislead the jury, and on the contrary the instructions, in our judgment, in substance and effect, correctly stated the law applicable to the evidence.

On the whole the instructions were not unfavorable to appellant.

The fourteenth cause for a new trial brings in review the action of the court in refusing to require the jury to return to their room to make fuller answers to the interrogatories. The objections of appellant have been waived except as to the answer to the second interrogatory.

We have hereinbefore set out this interrogatory and the answer thereto.

The answer to this interrogatory was responsive, definite, and certain, and there was no error in overruling the motion.

The remaining question discussed by counsel relates to the sufficiency of the evidence and the amount of the recovery. It was the province of the jury to determine these questions, and as the evidence tends to sustain the verdict on every material point, this court will not disturb it.

"Appellant contends that, upon any reasonable view of the evidence, the verdict is largely excessive."

Counsel says: "We do not think the evidence justifies the inference that there was any understanding or expectation that appellee was to be paid wages, until after the death of her son, if there was then."

The evidence tends strongly to prove that during, or soon after, 1881 Judge Knight said to appellee, in the presence of others, that she knew he had prior thereto, but when it does not appear, promised that she should have the interest in his estate which her husband would have received, at his death, had he lived, which declarations were made under circumstances indicating that such

promise had been made to appellee to induce her to live with him and to perform the services in question, and these conversations and declarations in connection with his statements relative to the contemplated purchase of property for her, when considered in the light of all the other circumstances in the case, were sufficient to authorize the jury in finding that such promises in regard to compensation were made at or about the time she entered upon the rendition of the services.

The affliction of Judge Knight in 1871, his gradual decline thereafter, his almost helpless condition for many years before his death, the length, constancy, faithfulness, character and value of the services rendered by appellee, all of which the evidence, to say the least of it, tends strongly to support, impresses the court, under all the circumstances surrounding the case, that the amount assessed by the jury is not excessive.

Our conclusion is that the cause was fairly tried and determined in the court below. Section 658, R. S. 1881.

Judgment affirmed.

Filed March 1, 1893.