## FOWLER *v.* JOHNSON and Others.

In 1837, A agreed, by title-bond, to convey to B, a certain tract of land, on the payment of two hundred dollars in hand, one hundred and thirty dollars on September 24th, 1837; one hundred and twenty dollars September 24th, 1838; one hundred and ten dollars September 24th, 1839, and received the payment in hand. In 1837, B assigned his interest in the bond to C, who assigned his interest to D, and the latter paid to A the first of the deferred payments. D failed to pay the last two installments, and, after his failure, in 1841, A, without having tendered a deed, or demanded payment of any one, sold the property to E, both A and E having notice of the assignment of the bond to D. E took possession of the property, and expended nine hundred dollars in improvements on it. In 1842, D assigned the bond to F, and in 1850, the latter tendered to A the balance due on the property, and demanded a deed, and A refused to receive the money, or make a deed, or have any thing further to do with it.

*Held*, that F was entitled to recover of A the amount of money paid, with interest, because the acts of A sufficiently indicate an election, on his part, to rescind the contract evidenced by the bond.

APPEAL from the *Elkhart* Circuit Court.

PERKINS, J.—On the 14th of January, 1837, *Henry Johnson* agreed, by title-bond, to convey a lot of ground to *Taylor* and *Garrison*, in consideration of five hundred dollars, to be paid by them as follows: Two hundred dollars in hand; one hundred and thirty dollars September 24th, 1837; one hundred and twenty dollars September 24th, 1838; and one hundred and ten dollars September 24th, 1839. The two hundred dollars were paid in hand. On the 9th of May, 1837, *Garrison* assigned his interest in the bond to *Taylor*. In August, 1837, *Taylor* assigned the bond to *Goldsmith*. In September, 1837, *Goldsmith* paid the installment of one hundred and thirty dollars which then fell due.

We now have *Goldsmith* holding *Johnson's* bond for a

deed to the lot, on the payment of two installments of purchase money, one of one hundred and twenty dollars, in September, 1838, and one of one hundred and ten dollars, in September, 1839; three hundred and thirty dollars of the purchase money having already been paid. The two installments remaining unpaid, amount, we discover, to two hundred and thirty dollars. The entire installments, it will be seen, include sixty dollars of interest.

*Goldsmith* failed to pay the last two installments, and after his failure, to-wit., on the 21st of April, 1841, *Johnson*, without having ever tendered a deed to, or demanded payment of,.any one, sold and conveyed the lot to one *Reuben Chapin*, for three hundred dollars, *Johnson* and *Chapin* both having notice of the assignment of the bond to *Goldsmith*. *Chapin* took possession, and expended upon the lot nine hundred dollars in improvements. In December, 1842, *Goldsmith* assigned the bond to *Fowler*, the plaintiff in this suit. Early in 1850, *Fowler* tendered the balance due on the lot, and demanded a deed, but *Johnson* refused to accept the money, or make, or cause to be made, a deed for the lot, or to have any thing further to do in the premises. In June, 1850, *Fowler* filed his bill in chancery, setting forth the facts and praying for the repayment of the purchase money paid on the bond, with interest, and for general relief. The issues in the cause were not made up, it seems, from the transcript, till 1857, when the cause was referred to a referee for trial, who reported in 1859, and upon whose report there was judgment for the defendants.

As to the practice to be pursued in suits tried by referees, see *Royal* v. *Baer*, 17 Ind. 332, and cases cited.

We need not inquire whether this suit, under the old practice, should have been on the law or chancery side of the Court, because, as the issues in it were not made up till long after the new code of practice was adopted, consolidating the two systems into one, if the pleading, called a bill in

chancery instead of a complaint, contained facts sufficient to constitute a cause of action in a suit under the code, that was sufficient.

Did it contain facts sufficient? for, if it did, as the facts were found true by the referee, the plaintiff should have recovered. The referee decided against the plaintiff, on the ground that the laches were not such as to bar a specific performance, and that, as *Chapin* purchased with notice, such performance, so far as laches were concerned, could be adjudged against him; that the remedy of the plaintiff must be sought, therefore, by a suit for such performance, and not by a suit to recover back purchase money paid, and that, though the lapse of time was not such as to bar specific performance, yet the fact of *Chapin's* improvements, though he made them with notice, was a bar to a judgment for specific performance. Such, if we comprehend aright the referee's report, was the view he took of the case, and which was adopted by the Circuit Court in confirming his report. We think too narrow and partial a view was taken of the case below.

A party may have an election, either to enforce a contract, or to treat it as rescinded, and recover back the purchase money paid. In the case at bar, *Johnson* might have tendered a deed and demanded the purchase money, on the day the last installment fell due, and he would thus have saved himself from default, would have placed himself in a situation in which he could have stood upon the contract, and sued upon it, under the old system, in law, or in equity, to recover the balance of his purchase money; or he could have neglected to tender a deed on the day, and yet, within a reasonable time afterward, tendered it, and thus saved a right to sue in equity for his purchase money; but he could have sued, neither at law, nor in equity, without having first tendered a deed.

So, on the other hand, the holder of the bond, upon the

Vol. XIX.—27

day the last installment became due, could tender that installment, the previous one having been paid, and demand a deed, and thus enable himself to stand upon the contract, and sue upon it, at law for damages, in equity for specific performance. Or he could neglect to tender the balance of purchase money on the day, and yet tender it in a reasonable time afterward, and still, no other obstacle intervening, sue in equity for specific performance. And either party, under the code, could maintain the action for redress allowed by it, where either the action at law, or in chancery, could have been maintained under the old system.

But both parties to a contract may abandon it, so that it can not be made the ground of an action by either; in other words, parties may rescind a contract either before or after breach; and after breach, certainly, by parol; that is, by simple mutual consent. And where one desires, or proposes to rescind, the other may be in a situation to accept his proposition, concur in his wish to rescind, or to refuse so to do, stand upon the contract, and enforce it specifically, or sue for damages for its breach. In the case at bar, when *Fowler* tendered the purchase money, and demanded a deed, suppose *Johnson* had replied: "I'll have nothing more to do with the contract; I intend to rescind it;" and that *Fowler* had replied: "I do not intend to rescind; I will sue you on the contract." This course he might have taken. But, suppose again, he had replied: "Very well; rescinded let the contract be;" what would have been the result? The contract would have been rescinded by mutual consent, and the legal consequence would have followed, that the parties must be placed, as near as possible, in *statu quo*, to do which *Johnson* would have to return the purchase money he had received, etc.

Now, upon the facts in this case, such consent to recision is inferable. After the day on which, at law, the last installment of the purchase money was to be paid, *Johnson*, instead

of tendering the deed and demanding the money, thus standing upon the contract, not only neglected to do this, but conveyed the property to a third person; and when performance of his original contract was demanded of him, he refused to have any thing further to do with the matter. Here was evidence of a determination to rescind on his part. Now, what did *Fowler* do? He proceeded to sue to recover back his purchase money. This was a concurrence in the determination of *Johnson* to rescind. See cases in point in that valuable work, the 2d. ed. of Fry on Specf. Perf., chap. 23, commencing top p. 339. See, also, *Cromwell* v. *Wilkison*, 18 Ind. 365.

*Per Curiam.*—The judgment below is reversed, with costs. Cause remanded for a new trial, with leave to amend, etc.

*J. H.* and *M. Baker*, for the appellant.

*J. A. Liston*, for the appellees.