No. 689.

## PUTERBAUGH, ADMINISTRATRIX, *v.* PUTERBAUGH.

PARENT AND CHILD.—*Action by Child for Value of Services Rendered.—Complaint.—Proper Allegations.—Presumption.—Voluntary Services.—When Entitled to the Quantum Meruit.*—Where the relation of parent and child exists, whether natural or assumed, and the child brings suit for the value of services rendered, it is proper to aver, in the complaint, promises and circumstances under which the services were rendered, for the purpose of rebutting the presumption that such services were voluntarily rendered as a member of the family, without expectation of compensation; for where the family relation exists between the party rendering the services and the person for whom the services are rendered, the presumption is that the former is not entitled to compensation for his services, but this presumption may be overcome by proof of facts and circumstances sufficient to warrant the jury in the inference that there was an agreement for such compensation.

INSTRUCTIONS TO JURY.—*Erroneous Instruction.—Parent and Child.—Action by Child for Value of Services.—Presumption.*—In an action on the *quantum meruit* for services rendered, by a person who had assumed the relation of child to the deceased against whose estate the claim was filed, the court, in instructing the jury, said, in substance, that if the services were rendered by appellee with the expectation of being made the heir of the deceased, such services and expectation on the part of the claimant, if founded upon the conduct of the deceased, would rebut the presumption that the services were voluntary, and the law would imply a promise to pay for them what they were reasonably worth; such instruction was not only an inaccurate statement of the law as applicable to the facts and circumstances of the case, but was calculated to mislead the jury, and amounts to reversible error. The conduct of the deceased must have been such as to justify such expectation before it will rebut the presumption that the services were voluntary.

REAL ESTATE.—*Contract of Sale.—Warranty.—Part Failure of Conveyance.—Damages, Measure of.*—In every contract for the sale of land there is an implied warranty by the vendor that he has and will convey a good title, unless such warranty is excluded by the terms of the contract, which warranty exists so long as the contract remains executory; and where the vendor fails to carry out his contract, and fails to convey a portion of the real estate sold, either by his refusal to convey, or by being unable to convey, as where the

Puterbaugh, Administratrix, *v.* Puterbaugh.

wife refuses to relinquish her inchoate interest, the vendee may recover, in damages, the value of the land not conveyed at the time of the breach, less the unpaid contract price, if any remains.

FORMER ADJUDICATION.—*Action to Quiet Title.—Damage Resulting Chargeable Against Decedent's Estate.—Procedure.*—A. entered into a contract with B. for the conveyance of a tract of land. A. died, not having conveyed the land, and A.'s wife was appointed his administratrix. B. brought suit against A.'s widow to quiet his title to the land, and the widow answered, setting up claim to one-third of the land, and the suit resulted in a finding for B. as to two-thirds of the land, and for the widow as to the remaining one-third. Subsequent to this suit B. filed a claim against A.'s estate for damages for breach of the contract as to the one-third of the land embraced therein, belonging to the widow.

*Held,* that the judgment in the suit to quiet title did not, in such case, operate as an adjudication of the claim for damages, because the estate of A. could not have been joined as defendant with the widow in such suit. And, under the procedure as fixed by the law in regard to claims against decedents' estates, B. was compelled to recover partly under one form of action and partly under another.

EVIDENCE.—*Record of Another Suit.—Contract of Sale.—Breach of.— Damages, Measure of.*—In an action against a decedent's estate for damages, for breach of a contract of conveyance, where the widow claims her interest therein, upon suit being brought to quiet title thereto by the vendee, the record of the suit to quiet title is conclusive evidence of the failure of contract on the part of the decedent, and the claimant is entitled to recover the damages accruing to him by reason of such breach, which is the value of the widow's interest at the time of the breach, with interest at six per centum per annum.

Opinion on petition for rehearing by Ross, J.

From the Cass Circuit Court.

*D. C. Justice, B. K. Elliott* and *W. F. Elliott,* for appellant.

*M. Winfield, D. D. Dykeman, W. T. Wilson, J. C. Nelson* and *G. C. Taber,* for appellee.

DAVIS, J.—This was an action by appellee based on a claim in the form of a regular complaint in two paragraphs, filed against the estate of Henry Puterbaugh, July 12th, 1890, and was tried upon the issues made by the statute, without any special answers.

Demurrers to each paragraph of the complaint were overruled and exceptions reserved, and the jury upon the trial returned separate verdicts as to each paragraph, and also answers to interrogatories. The amount recovered on the first paragraph was $608.33⅓, and on the second paragraph $1,891.66⅔.

Separate judgments were rendered on each paragraph upon the overruling of appellant's motion for a new trial, and some intermediate motions, on the 20th day of June, 1892, for the amount of the respective verdicts aggregating $2,500.

Seven errors have been assigned in this court, by appellant, which, so far as they have been discussed, will be stated and considered, in the course of this opinion, in the order adopted by counsel in presenting the same. A considerable amount is involved, and the controverted questions are important. The court, however, in this connection, takes pleasure in saying that the case has been fully and ably presented by learned counsel for the respective parties, in briefs, and also on oral argument.

It is alleged, in substance, in the first paragraph of the complaint, that the appellee is the nephew of Henry Puterbaugh, deceased, and that at the time of the filing of the claim the appellee was thirty years of age; that when appellee was eighteen months of age he entered the family of Henry Puterbaugh,—Henry being childless —"under the promise and agreement made and entered into by and between said Henry Puterbaugh, deceased, and the plaintiff's said father, that the said Henry Puterbaugh would take the plaintiff and raise him as his son, and in consideration of the plaintiff's services and of his sacrificing his own home would make him, the plaintiff, his heir and provide for him by will upon his death; that in pursuance of said contract the plaintiff's father released plaintiff from service, and gave to him his time,

and consented that he should have the benefit and value of his said services during all the time he was a minor; and in pursuance of said agreement and contract the plaintiff came to the home of said decedent and lived with him as his son, up to the time he became twenty-one years of age.''

Then follows the averments that the deceased owned a large farm of 390 acres, and carried on an extensive business at farming and raising cattle, and that the plaintiff assisted him and rendered such services as the decedent required in running the farm, and in latter years of decedent's life taking entire charge of, superintending and directing the operation of, his farm, and that the plaintiff received nothing for his services, and that the decedent frequently renewed and reiterated his promise ''to make plaintiff his heir and provide for him in his last will,'' and that said Henry Puterbaugh died September 5th, 1889, suddenly, intestate, without having made any provision for plaintiff, and that his services so rendered said decedent were of the value of five thousand dollars.

The evidence fairly tends to prove that the mother of appellee died in 1862, when he was eighteen or twenty months old; that appellee was the youngest of seven children; that his father was a poor man and the brother of Henry Puterbaugh, who was well to do, and had no children; that when the mother of appellee was on her death bed, his uncle took appellee home with him, for the reason as stated by him at the time that appellee was unruly and made too much disturbance about the house for his sick mother, and that a few days after the death of his mother Henry Puterbaugh and father of appellee had a conversation in which his uncle asked permission to keep the boy, which was granted on condition that he would take appellee and do by him the same as though

he was his own son.    Henry Puterbaugh, in pursuance thereof, kept appellee, and appellee proved to be a good, faithful, and industrious boy and rendered efficient and valuable services for his uncle, until he arrived at the age of twenty-one years.

Henry Puterbaugh said on different occasions, in substance, that appellee was a very good and industrious boy, and that he run and managed the farm, did the work, and made the money, and that he, Henry, took care of the money; that he could always depend on appellee; that he had trained him right; that appellee looked after his affairs, attended to the work and managed the hands in all respects exactly right, and that appellee had been such an excellent boy he was going to do a good part by him.

Henry Puterbaugh died in a field on the farm, suddenly, childless, without having made any provision for appellee, except the real estate which he had agreed several years prior to his death to convey to him in payment for services rendered by appellee after he arrived at full age, and other considerations.

We have not attempted to set out in detail all of the evidence introduced on the trial by the respective parties relative to the issue raised by the first paragraph of the complaint.    On this branch of the case, it will suffice to say that we have called attention to the substance of the material part of the evidence bearing on the question discussed by counsel.

Counsel for appellant say, with reference to the evidence in support of the first paragraph:    "This paragraph is based upon an express promise, and not otherwise.    It is not proved, nor is there a scintilla of evidence to uphold it.    It is no question of a conflict, but an entire absence of all evidence to sustain this paragraph and the contract therein alleged.    Nor, indeed, is there

a line pointing to an implied promise to make the appel-
lee the heir of the decedent. * * That the plaintiff
must recover upon some definite theory of his complaint.
He must recover *secundum allegata* or not at all."

The general rule undoubtedly is that a complaint
must proceed upon some single definite theory which
must be determined from the general scope and character
of the pleading; and in order to entitle the plaintiff to re-
cover, the evidence which he introduces must support
that theory. *Chicago, etc., R. R. Co.* v. *Bills,* 104 Ind.
13; *First Nat'l Bank* v. *Root,* 107 Ind. 224; *Wagner* v.
*Winter,* 122 Ind. 57; *Schaffner* v. *Rober,* 2 Ind. App. 409;
*Carter* v. *Lacy,* 3 Ind. App. 54; *Thompson* v. *State, ex
rel.,* 3 Ind. App. 371.

The principles which underlie the authorities cited and
relied on by counsel for appellant, are founded on sound
reason, are sustained by a long and unbroken line of
able decisions rendered by learned judges, and should
be, and no doubt will be, adhered to and followed in all
cases where applicable, but the question of prime im-
portance for our present inquiry is whether they are in
point in the case now under consideration.

On investigation, we have reached the conclusion that
the first paragraph is not a complaint to recover on the
alleged special contract therein mentioned, but, in the
language of counsel for appellee, "it is a complaint to
recover on the *quantum meruit,*" the value of the serv-
ices rendered. Had the appellee instituted an action
upon the contract set out in the first paragraph for spe-
cific performance, he must necessarily have failed in the
action, because such a contract can not be enforced.

The gist of the first paragraph of the complaint is to
recover the value of the services alleged to have been
rendered by appellee, before he arrived at the age of
twenty-one years, for said decedent. The action is based

on the rendition and value of the services and the agreement implied by law, under the circumstances stated, to pay therefor.

The *gravamen* of the action being to recover for the value of the services rendered, the averments in this paragraph of the complaint, relative to the promises and circumstances under which the services were rendered, are only material for the purpose of rebutting the presumption that such services were voluntarily rendered as a member of the family, without expectation of compensation.

The case in the first paragraph was evidently tried in the court below on this theory.

It is earnestly contended by counsel for appellant, in this connection, that the family relation which was created when appellee originally entered his uncle's family could not be changed into the relation of master and servant, except by pleading and proving an express contract; that in cases where the relation of master and servant was the one originally assumed, it was only necessary to a recovery to show facts from which an implied contract might arise; that the express contract laid in the first paragraph of the complaint must be proven before there could be a recovery thereon in this case in behalf of appellee; that an agreement of the parent to compensate the son for services rendered by the son while residing with his father, as a member of his family, may not be inferred from circumstances, and that the proof of an implied promise, or of such facts and circumstances as created an implied promise, would not sustain the verdict for appellee.

With some of the propositions stated by counsel for appellant, and with much of their argument, we agree, but with other statements of the principles which they contend underlie this case, we can not agree, neither do

we entirely concur in the application of some of the principles correctly stated to this case.

It is true that when a son resides with, and labors for, his father, as a member of his family, whether married or single, and either before or after the son reaches full age, there is no implied understanding that the father shall compensate the son for such labor, but an agreement of the father to compensate the son for such services may be inferred from the circumstances. *Hilbish* v. *Hilbish*, 71 Ind. 27; *Smith* v. *Denman*, 48 Ind. 65.

The failure to prove the alleged express contract with Henry Puterbaugh, relative to making appellee his heir or providing for him by will in the terms stated in the pleading, when appellee entered the family of his uncle, would not prevent a recovery by appellee, if he sufficiently proved on the trial the rendition and value of the services under so much of the promises and circumstances mentioned in the first paragraph as authorized the jury in the inference that there was an agreement to to pay therefor.

The law is well settled that where persons standing in the relation toward each other occupied by appellee and his uncle, there is no obligation to pay for services rendered in the absence of an express promise to pay, unless the circumstances are such as to raise the presumption of an agreement to pay therefor. *James, Admr.*, v. *Gillen*, 3 Ind. App. 472, and authorities cited.

Owing to the family relations existing between the parties, the presumption is, in the absence of an express agreement to the contrary, that appellee was not entitled to compensation for his services, but this presumption may be overcome by proof of facts and circumstances sufficient to warrant the jury in the inference that there was an agreement for such compensation, and if there is any evidence in the record tending to support that

Puterbaugh, Administratrix, *v.* Puterbaugh.

theory, the judgment of the court below, on the first paragraph, can not be reversed on the evidence. *James, Admr.*, v. *Gillen, supra; Smith* v. *Denman, supra; Hilbish* v. *Hilbish, supra; Taggart, Admr.*, v. *Tevanny,* 1 Ind. App. 339; *Knight, Admr.*, v. *Knight,* 6 Ind. App. 268.

In the able opinion written by Judge Crumpacker, *James, Admr.*, v. *Gillen, supra,* the court says that in such cases the relation sustained by the parties "is a mixed question of law and fact, and belongs to the jury, under the proper instructions of the court."

Counsel for appellant have ably and ingeniously argued that there is no evidence in the record tending to sustain the verdict on the first paragraph.

Moreover it is urged, in substance, as especially applicable to this case, that "The law recognizes the home as the most potent refining and humanizing agency known to our civilization, and its policy is to encourage the extension of its hospitalities to those who, by the hand of misfortune, may have been deprived of its protection and beneficent influences. But if one, out of benevolent disposition, should adopt a parentless child into his family as a member thereof, and faithfully perform the office of parent, and the child, upon reaching its majority, should be permitted to convert the relation into that of master and servant, and recover whatever a court or jury might conclude the services were worth over and above the cost of support in dollars and cents, the result would be deplorable. It would close all of the private homes of the country against the orphan." *James, Admr.*, v. *Gillen, supra.*

And that "such claims ought to be frowned on by courts and juries."

We fully and heartily concur in the statements above quoted, as applicable to cases similar to those then un-

der consideration, but such principles can not be applied in all actions for services where the family relation has existed between the claimant and decedent. In this connection, we quote from the opinion of *Taggart, Admr.*, v. *Tevanny, supra*, where Judge REINHARD, speaking for the court, says:

"If with the law as now construed there is still some disposition by juries to deal too liberally with the estates of decedents, the fault must be laid to those whose duty it is to find the facts rather than to the rules of the law as thus interpreted, and it is but another instance of the many where a good law is sometimes used for the accomplishment of a bad end. But to say that such claims are not favored by the law, as argued by appellant's learned counsel, would be saying that the law did not favor the payment of honest debts."

In support of the contention that the judgment of the court below on the first paragraph should be reversed on the evidence, counsel for appellant cite *James, Admr.*, v. *Gillen, supra; Brown* v. *Yaryan*, 74 Ind. 305; *Hays* v. *McConnell*, 42 Ind. 285; *Estate of Reeves* v. *Moore*, 4 Ind. App. 492.

In the Gillen case, Judge CRUMPACKER, in discussing the principle, says: "It is universally held, in all cases where the family relation exists, whether natural or assumed, in the absence of an express agreement or circumstances from which an agreement may be fairly inferred, that no promise will be created by implication of law to pay for services upon one hand or for support upon the other."

We heartily approve of this wise and salutary rule, and of its application in the cases cited by counsel for appellant. In this case the question is, are the circumstances such as to warrant the inference by the jury that

there was an agreement on the part of the decedent to pay for the services rendered by appellee?

The evidence in this case in support of the first paragraph is not satisfactory. 'It has been passed upon by the jury favorably to appellee, and has the approval of the trial court, but, notwithstanding all this, if the Appellate Court had the power to weigh and consider the evidence, as a trial court, we would perhaps have reached a different conclusion; but can this court say there are no facts or circumstances shown in the evidence from which the jury was warranted in drawing the inference that there was an agreement or understanding between the parties to the effect that appellee was to have compensation for his services? There is evidence tending to prove that Henry Puterbaugh was comparatively wealthy and childless.

In the beginning, there was no agreement as to the length of time he was to keep appellee. He became a strong, capable and industrious young man, remained in the service of his uncle until he was twenty-one years of age, rendered valuable services, and, by his care, assistance, management, and industry, contributed to the accumulation of considerable property. He was the favorite nephew, and his uncle frequently spoke of him and of his industry, capacity, and worth, in complimentary terms, and expressed the purpose of doing a good part by him.

In view of the conclusion we have reached, as hereinafter stated, it is not necessary for this court, at this time, to decide whether there was or was not any evidence tending to support the verdict. See *Schoonover, Exec.*, v. *Vachon*, 121 Ind. 3; *Wallace, Admr.*, v. *Long, Guar.* 105 Ind. 522; *Roehl, Admr.*, v. *Haumesser*, 114 Ind. 311; *Burns* v. *Fox*, 113 Ind. 205; *Miller, Admr.*, v. *Eldridge*,

126 Ind. 461; *Taggart, Admr.,* v. *Tevanny, supra; Knight, Admr.,* v. *Knight, supra.*

Complaint is also made of instructions given by the court to the jury, and, on careful reading and consideration of all the instructions, when taken and considered together, as an entirety, we are of the opinion, unless it is with one exception hereinafter stated, that they fully, fairly and clearly state the law in all of its bearings applicable to the case on the issue presented by the first paragraph, and that the jury could not, except, perhaps, in one instance, have been confused or misled in any respect, to the prejudice of appellant, by the instructions.

In the third instruction, the court said to the jury, clearly, in substance, that if the services were rendered by appellee ''with the expectation of being made the heir'' of Henry Puterbaugh, such services and expectation on the part of Horace, ''if founded upon the conduct'' of Henry Puterbaugh, ''would rebut the presumption that the services were voluntary, and the law would imply a promise to pay for them what they were reasonably worth.''

In view of the meagerness of the evidence on the vital point in the case, the statement that the services were rendered on the mere expectation entertained by Horace of being made an heir of his uncle, founded on the conduct of said Henry, without qualification or explanation as to whether the conduct was of such nature or character as would reasonably have sanctioned or justified the expectation, was, in the opinion of the court, not only an inaccurate expression of the law as applicable to the facts and circumstances of the case, but was calculated to mislead the jury.

If such instruction had reminded the jury that such expectation of appellee might have been predicated upon such conduct of Henry Puterbaugh as would have au-

thorized him in entertaining the expectation, a different question would be presented; but to say that such expectation of appellee, based alone upon the conduct of his uncle, would entitle him to recover, without any reference to the fact whether the conduct of said decedent was reasonably and fairly calculated to create such expectation, is, under the circumstances, more than the court is willing to approve.

The second paragraph is as follows:

"The plaintiff, for a second paragraph of complaint, shows the court that Margaret Puterbaugh is the administratrix of the estate of Henry Puterbaugh, deceased, who died September 5, 1889, intestate, in Cass county, Indiana; that the plaintiff was the nephew of the deceased, and lived in his family, as his son and a member thereof, from the time he was eighteen months of age until he was twenty-six years of age. In August, 1886, the said Henry was the owner, in fee, of the following lands in said county: * * * in all, 390 acres; that about August, 1886, the plaintiff, contemplating marriage, entered into a contract with the deceased, as follows: The deceased, Henry Puterbaugh, proposed to the plaintiff, in consideration of love and affection by the deceased for this plaintiff, and the further consideration that the plaintiff would assist the deceased with his money, time and labor, in the erection of a house and barn upon * * * eighty acres of said land, which land the deceased then owned, as herein stated, and if he, the plaintiff, would take possession of and occupy the same when married, that he, the deceased, would convey said lands to the plaintiff; the deceased further proposing that the plaintiff should pay during his, "the deceased," lifetime, one-half of all the crops that might grow on the said lands; the deceased to pay the taxes thereon and furnish the plaintiff with agricultural implements to cul-

tivate the same; that this plaintiff, Horace Puterbaugh, then and there accepted said proposition, and in pursuance thereof and relying thereon—assisting the said Henry to erect a barn and house on said land with his money, time and labor, and further relying on said proposition of the deceased—the plaintiff and his wife, with the knowledge and consent of the deceased, entered into possession of said eighty acre tract of land, and there remained in the exclusive possession thereof, under said contract, from the year 1886 up to the death of said Henry; that relying on said contract, and in pursuance thereof, this plaintiff, during the lifetime of said Henry, gave to him the one-half of all the crops raised on said land, and in all things fully performed all the conditions and terms of said contract on his part.

"He further shows the court that upon the faith of said contract, and while in possession of said lands, he made lasting and valuable improvements thereon in this, to wit: He erected around the house and garden a substantial fence, graded the lot, planted shade trees in the yard, erected fences, set out shrubbery and fruit trees in the garden, dug and walled a well, dug a cellar, and laid a floor in the mow of the barn; that the deceased, as he had agreed, paid the taxes on said lands during his lifetime; that at different times, and up to his death, the deceased recognized and treated said eighty acres as the property of this plaintiff, and frequently promised, under the terms of the contract, to execute to the plaintiff a deed for the same; that the said Henry died suddenly and unexpectedly, without having executed said deed; that said eighty acres of land was, at the death of said Henry, of the value of five thousand dollars; that the deceased, at the date of his death, was the owner, in fee, of all the lands herein described, except the eighty acre tract he contracted to convey to this plaintiff; that the

deceased left surviving him his wife, Margaret Puterbaugh, and no children; that on the 30th day of November, 1889, this plaintiff commenced his action in the Circuit Court of Cass county, Indiana, against the said Margaret, as such wife, to quiet his title to said eighty acre tract; that she appeared and defended against the action, claiming to be the owner of said lands as widow of the deceased and his sole heir, denying that this plaintiff had any interest therein; that said cause came on for trial before the court and jury, in which the jury returned a special verdict upon which the court adjudged and decreed that this plaintiff was the owner of but an undivided two-thirds of said eighty acres, and the said Margaret the owner of the other undivided one-third thereof as the widow of said Henry Puterbaugh, because she never joined with her said husband in any conveyance thereof; that, from this decree of the court, the said Margaret has appealed to the Supreme Court of Indiana, where said cause is now pending, for the purpose of having the judgment of the court below reversed, thus endeavoring to entirely defeat plaintiff's claim; that this plaintiff, in order to protect his rights and claim against the estate of the deceased, is thus compelled to prosecute this suit.

"The plaintiff says that because of the failure of the deceased to execute to him his deed for said eighty acre tract of land in his lifetime, as he had agreed, his, the plaintiff's, title to one-third thereof has failed, to his damage in the sum of $1,667, that being the value thereof; that the same is past due and unpaid; that there are no offsets or counterclaims whatever thereto in favor of said estate; that there is due this plaintiff from said estate the sum of five thousand dollars."

This complaint was duly verified.

The insufficiency of the second paragraph is urged for several reasons.

First it is insisted that there was no warranty in the contract in question, and that on failure of a grantor, under such an agreement, to convey the real estate, or any portion thereof, no action can be maintained by the grantee for the damages sustained by such breach.

Many authorities are cited in support of the proposition "that in cases where there is no covenant and no fraud, a vendee can not recover, although there is a complete failure of title."

This rule, as we understand it from an examination of the authorities, applies in actions where deeds of conveyance have been executed and accepted which do not contain covenants of title, or where there is no agreement, either express or implied, for a warranty deed in cases where the conveyance has not been made. This action, however, is not based upon a covenant of conveyance, but is based upon a contract to convey, and is to recover the value of that portion which the obligor failed to convey. Moreover, in every contract to convey, in the absence of some stipulation to the contrary, there is an implied agreement to convey a good title.

Had Henry Puterbaugh, during his lifetime, or Margaret, his only heir after his death, executed to appellee a quitclaim deed for his interest in the land, and appellee had accepted the deed, then the principles urged by appellant's counsel would apply.

If such quitclaim deed, so executed by Henry, without his wife joining therein, had been accepted by Horace, there could be no recovery by him for failure of title. The distinction is that an action for a breach of contract to convey is essentially different from an action for a breach of covenants of conveyance.

The weight of authority supports the proposition that

in an action based upon a contract. for damages neces-
sarily resulting to the plaintiff because of the failure or
refusal of the defendant to convey, when the full con-
tract price has been paid, the vendee is entitled to re-
cover the value of the land, or interest therein, not con-
veyed. This rule prevails in cases where the vendor,
through unanticipated causes, which he can not control,
although acting in good faith, is unable to convey.
*Doherty* v. *Dolan*, 65 Me. 87, and authorities therein
cited; *Drake* v. *Baker*, 34 N. J. L. 358; 2 Warvelle on
Vendors, 959; 2 Sutherland on Damages, 217; *Pumpelly*
v. *Phelps*, 40 N. Y. 59; *Lewis* v. *Lee*, 15 Ind. 499; *Wil-
son* v. *Brumfield*, 8 Blackf. 146; *Martin* v. *Merritt*, 57
Ind. 34; *Woodbury* v. *Luddy*, 14 Allen, 1; *Dustin* v. *New-
comer*, 8 Ohio, 49; *Hopkins* v. *Lee*, 6 Wheat. 109.

It is also a well settled principle that in every contract
for the sale of land there is an implied warranty by the
vendor that he has and will convey a good title, unless
such warranty is excluded by the terms of the contract.
The implied warranty exists so long as the contract re-
mains executory. After a deed has been made and ac-
cepted, then the vendee must, as a general rule, rely on
the covenants in the deed. *Durham* v. *Hadley*, 27 Pac.
Rep. 105 (108), 47 Kan. 73; 2 Sutherland on Dam-
ages, 202; *Burwell* v. *Jackson*, 9 N. Y. Ct. of App. 535;
1 Marvelle on Vendors, 417; *Dwight* v. *Cutler*, 3 Mich.
566 (576), and authorities cited.

Our conclusion is that where the vendor fails to carry
out his contract to convey a portion of the real estate
sold, either by his refusal to convey or by being unable
to convey, as where the wife refuses to relinquish her
inchoate interest, the vendee may recover in damages
the value of the portion of the land not conveyed at the
time of the breach, less the unpaid contract price, if any-
thing remains unpaid. The vendee in such case may, in

part discharge of the obligation, accept the conveyance of the vendor for that part which he may be able to convey, and recover from the vendor the value of the part not conveyed.

It is next insisted that the institution of the suit by appellee against said Margaret, the widow and only heir of said Henry Puterbaugh, to quiet title to said eighty acres, was equivalent to accepting a quitclaim deed of conveyance in discharge of the contract, and that his recovery on the contract in that action is a complete bar to this action.   *Puterbaugh* v. *Puterbaugh,* 131 Ind. 288, 30 N. E. Rep. 519.

The proposition that where suit is brought upon a contract or to quiet title to real estate, all rights and liabilities growing out of the transaction between the parties are settled and concluded by the judgment rendered in that action, as well those that might have been put in isssue as those that were at issue, as a general proposition of law, is no doubt sound, but this rule can not be invoked by appellant in the case at bar.

In an action against Henry Puterbaugh in his lifetime, appellee could have obtained a decree quieting title to the real estate, subject to the rights of said Margaret as his wife therein, and also could have recovered compensation in damages on account of the interest retained by her, but, after the death of Henry, in an action to quiet title against Margaret as heir, he could not, in the event she asserted her rights as widow, recover damages for the value of such interest, in the same action.   Under our statute, no action can be brought, in the ordinary manner, against an estate for the recovery of any claim against the decedent, but the holder of any such claim is required to "file a succinct and definite statement thereof" on the probate side of the docket.   Section 385,

Elliott's Supp.; *Pearson* v. *Pearson*, 125 Ind. 341 (349); *State, ex rel.*, v. *Cunningham, Exec.*, 101 Ind. 461.

The reason for the general rule, hereinbefore stated, now under consideration, is that all rights and liabilities arising out of the transaction can be determined in that action. And what can be determined in one action ought to be determined to avoid a multiplicity of suits. This rule can not, however, as before indicated, be applied to this case, for here the reason for the rule fails.

We adopt, as a part of our opinion on this question, an extract from the reasoning of counsel for appellee:

"Now, when appellee brought suit to quiet title against Margaret Puterbaugh, and she set up her claim as widow of Henry Puterbaugh to one-third of the land in the conveyance of which she had not joined, the appellee could only recover in that action a judgment against Margaret Puterbaugh, the heir, quieting his title to two-thirds of the land. And the right of action for damages for the other one-third then accrued, not against Margaret Puterbaugh, the heir, but against the estate of Henry Puterbaugh, deceased, and the appellee could no more join Margaret Puterbaugh, the administratrix, and recover damages against the estate in that action, than he could have joined any other person who might have been administrator. The law positively forbids the recovery of a judgment against an estate in that way. Wherefore, the judgment in that action is not a complete determination of all the appellee's rights under the contract of sale of the land, and does not pretend to be, and constitutes no bar or estoppel against the appellee prosecuting a further claim against the estate of the decedent for that which could not be recovered in that action."

Nor has the appellee split his cause of action into "shreds and patches." The law of the State of Indiana, which has arbitrarily fixed the procedure in claims

against decedent's estates, has divided his cause of action so that he must recover part under one form of action and part under another form of action.

There was no error in overruling the demurrer to the second paragraph of the complaint.

On the trial, over objection of appellant, the court allowed appellee to introduce in evidence the pleadings and judgment in the former action between appellee and said Margaret, and then in relation thereto the court gave the jury the following instruction:

"In support of the second paragraph of the complaint, the plaintiff has introduced in evidence the record in the case of Horace Puterbaugh *v.* Margaret Puterbaugh made, in the Cass Circuit Court. If the jury find from the evidence that Margaret Puterbaugh was sole heir of Henry Puterbaugh, deceased; that the debts against the estate, except the one in controversy, have been paid, and that she is administratrix of said estate, and the sole beneficiary, then I charge you, gentlemen of the jury, that such record, and the contents thereof, conclude the defendant as to all matters contained thereunder, and legitimately determined by the court, and I instruct you that by such record it is conclusively settled that there was a contract between the plaintiff and the deceased, Henry Puterbaugh, for the entire eighty acres of land; that Horace Puterbaugh, the plaintiff, had fully performed his part of the contract at the time of the death of Henry Puterbaugh, and was entitled to a deed in fee-simple for the whole eighty acres of land; that Henry Puterbaugh died, failing to make the deed, and that the defendant, Margaret Puterbaugh, as the heir-at-law of Henry Puterbaugh, and as his widow, refused to perform said contract and claimed her undivided one-third part of said land, which was set off to her in fee-simple in that case; that by such record it is conclusively settled

that there has been a failure of contract upon the part of the deceased, and the plaintiff is entitled to recover upon the second paragraph of the complaint the damages accruing to him by reason of the failure of such contract, and I charge you, gentlemen of the jury, that the measure of damages is the value at the time of the death of the deceased of the one-third interest of said land, to which the jury may add interest at the rate of six per cent.''

The evidence tended strongly, and without contradiction, to support the proposition that said Margaret was the sole and only heir, and that all the debts except the one in suit had been paid.

The record was admissible as tending to prove the averment that appellee had been deprived of a one-third interest in the land. It was undoubtedly binding and conclusive on both parties thereto as to all matters embraced therein.

The material and serious question is, was it conclusive between appellee and the administratrix? In other words, is the estate of Henry Puterbaugh, deceased, represented by her in the fiduciary capacity as administratrix, under the circumstances of the case to which attention is called in the instruction, conclusively bound by the record and proceedings in the action against said Margaret in her personal capacity alone as widow and heir?

The questions arising on this instruction have been ably and elaborately argued, and many authorities have been cited.

Counsel for appellant insist that ''the relation she sustained to the two causes was wholly dissimilar. It is purely an accidental circumstance that the name of the heir, of the widow and of the administratrix are the same,

or that they are the same person. No act of one could bind the other," etc.

The general rule is correctly stated in the opinion written by Chief Justice ELLIOTT, in the case of *Wilson* v. *Peelle, Admr.*, 78 Ind. 384, where the court says: "It is a familiar rule, that a judgment binds only parties and privies, and this elementary rule applies here."

Does "this elementary rule" apply in this case?

Freeman, in his valuable work on judgments, says: "If the heir is also executor or administrator he represents in his two capacities the interests of one and the same person, and has full opportunity, in a suit against himself as the personal representative, to protect his rights as successor to the realty. There is no reason why one so situated should have the right to be twice heard upon the same controversy; and a judgment against him as administrator, establishing a claim against the estate, should conclude him as heir." Section 163.

To the same effect are *Stewart* v. *Montgomery*, 23 Pa. St. 410; *Boykin* v. *Cook*, 61 Ala. 472; *Valentine* v. *Mahoney*, 37 Cal. 389; *Stoddard* v. *Thompson*, 31 Iowa, 80; *Burns* v. *Gavin*, 118 Ind. 320; *Palmer* v. *Hayes*, 112 Ind. 289; *Montgomery* v. *Vickery*, 110 Ind. 211.

No case has been cited in which the exact question here presented has been decided. The former action in this case was against the heir. The present action is against the administratrix representing the estate. Suppose the result in the other case had been that the alleged contract between appellee and Henry Puterbaugh had not been made, could he have renewed the contest by making such alleged contract the basis of a claim against the estate?

It occurs to us that if Margaret Puterbaugh had defeated him on such ground in that action, he could not recover in this. If, on such result, he would have been

estopped, "why then should not the defendant be precluded from gainsaying the decisiveness of the result? Equality of right in our courts of justice lies at the very foundation of American jurisprudence." *Stewart* v. *Montgomery, supra.*

If, on the facts stated in the authorities cited, the judgment against the administrator conclusively binds him as heir, we are unable to see why, under the circumstances of this case, the judgment against Margaret Puterbaugh as heir does not conclusively bind her as administratrix. If there were any creditors, persons, or heirs interested in the estate or in the result of this litigation, the rule would undoubtedly be different. In this case, however, the sole and only person who has any interest in the result of the litigation or in the estate is Margaret Puterbaugh, and in a former action between herself and appellee the question in issue as to the nature and character of the contract with Henry Puterbaugh, relative to the land, has been litigated and adjudicated, and our conclusion is that, as applicable to the facts in this case, the court did not err in giving the instruction quoted.

Judgment affirmed on the second paragraph of complaint, at costs of appellant, and reversed on the first paragraph, at costs of appellee, each party to pay one-half of the costs in this court.

Judge Ross did not participate in the decision.

Filed March 31, 1893.

## On Petition for a Rehearing.

Davis, J.—Counsel for appellant have filed a lengthy and an earnest petition for a rehearing in this case. We can not, within reasonable limits, fully again review all the questions therein discussed. Suffice it to say that as to the first paragraph the court was not required to

pass upon any other question than the one on which the case was reversed.   If the judgment on that paragraph had been affirmed, then we should have considered and decided every material question presented.

Although we discussed the question arising in the record on the first paragraph, in some respects, more at length than was necessary, yet it occurs to us that there should be no difficulty in reaching a correct conclusion as to what has been decided in relation thereto in the original opinion.   As to this paragraph, the judgment was reversed because of error in giving the third instruction.   We failed to discover any prejudicial error in any of the other instructions, so far as disclosed by the record as it comes to us on this appeal, but what we have said concerning these instructions does not necessarily imply that they may be correct statements of the law of the case on another trial.

Neither have we decided that the evidence was sufficient to sustain the verdict on this paragraph.   If the case is retried on that paragraph, appellee will have to prove to the satisfaction of the jury, under proper and correct instructions of the court as to the law applicable and pertinent to the case, that the alleged services of appellee were rendered either under an express contract or under sufficient of the circumstances mentioned and set out in the first paragraph as are necessary to raise the presumption of an agreement to pay therefor.   Owing to the family relation existing between the parties, the law does not imply a promise to pay for the services because of the rendition thereof.   The presumption is that appellee was not entitled to compensation for such services. It is incumbent on him to prove such facts and circumstances as will be sufficient to overcome this presumption and to raise the counter presumption of an agreement on

the part of his uncle to pay for such services.    If this is not done, he must necessarily fail.

It is insisted that, in any event, the agreement of Henry Puterbaugh to convey the eighty acres to Horace, his entry into possession, the improvements made thereon and the payment in full, by him, of the agreed price, did not create any obligation which he could enforce against the estate of Henry.

We can not agree with counsel that, as to the inchoate interest of Margaret in the real estate, the contract and acts of Horace averred in the second paragraph did not, and could not, amount to such performance as to take the case from the operation of the statute, and, therefore, as to one-third of the land, Horace is wholly without remedy, and that he is not entitled to recover the purchase price he paid therefor, or the value of the land of which he has been deprived.    The contention of counsel is "that the predominant idea and principle running through the Indiana cases is that liability can only arise from positive stipulation, and that in the absence of fraud no implied covenants are imported into any agreement in relation to lands."

In this case, however, there was, if we may use the expression, a "positive stipulation" under the allegation of the complaint, on the part of Henry, to convey the eighty acres of land to Horace.

It is strenuously urged that the court erred in holding that where the vendor fails to carry out his contract to convey a portion of the real estate sold under the circumstances alleged in the second paragraph of the complaint in this case, the vendee may recover, in damages, the value of the portion of the land not conveyed.

It is insisted that we have announced some propositions contrary to the law as it exists in the decisions of this State.

In *Bethell* v. *Bethell*, 92 Ind. 318 (325), the action was on the covenants in the deed. The court there said: "It is the general rule that in cases where there is no covenant and no fraud, a vendee can not recover, although there is a complete failure of title."

In *Stratton* v. *Kennard*, 74 Ind. 302, S. executed his note to executors of J. for real estate conveyed to him by them. In a suit on the note, it was held that in the absence of covenants of warranty, or for title, the defendant could not plead failure of title as a defense to the note.

In *Johnson* v. *Houghton*, 19 Ind. 359, it was held that on the assignment of a land office certificate issued by the government, there was no implied warranty of the title.

In *Atherton* v. *Toney*, 43 Ind. 211, the decision was that the assignee of an equity of redemption who accepts a deed without covenants takes it charged with the mortgage debt.

In *Johnson* v. *McCabe*, 37 Ind. 535, a deed for a patent right had been executed, in which there was no warranty. As a defense in a suit for the purchase-money, the defendant relied upon an alleged breach of the warranty. The court held that the purchaser was bound by the deed.

Other similar cases are cited which either relate to conveyances that have been perfected by deed or to conveyances of personal property. These cases, as we view them, are not in point here.

In *Sheets* v. *Andrews*, 2 Blackf. 274, the purchaser recovered in the court below. The judgment was reversed because the action was commenced without demand having been made. The court said, however, in relation to the measure of damages, as *gratis dictum*, in conclusion: "It appears to us, that where no fraud is alleged, the purchase money with interest, should be the measure of

damages, whether the breach complained of be of the covenant of seisin or of warranty contained in a conveyance, or whether it be, as in the present case, of a covenant to convey."

In *Blackwell* v. *Board, etc.*, 2 Blackf. 143, the board was authorized and required by the act of the Legislature, in changing the county seat, to convey, by deed, in exchange for lots in Palestine, other lots in Bedford, the new county seat. Blackwell complied with the requirements and demanded a deed, which was refused. The court held the county bound by the legislative acts, "as if they were the express stipulation of its constituted authorities, that they form a valid contract on a valuable consideration," and that the plaintiff had a right of action, and that "the measure of damages is the consideration or purchase-money, with interest." In that case, the consideration was held to be the value of the lots in Palestine, prior to the depreciation thereof on account of the passage of the act for the relocation of the seat of justice.

In *Adamson* v. *Rose*, 30 Ind. 380, in a suit on a contract and bond for conveyance, in which property had been accepted in payment of the purchase price, on failure to convey the plaintiff recovered the amount so paid with interest. The defendant appealed. No question as to amount of recovery seems to have been raised. The court, in affirming the judgment, said: "The measure of damages in such case is the purchase money and interest." See, also, *Wood* v. *Bibbins*, 58 Ind. 392; *Fowler* v. *Johnson*, 19 Ind. 207; *Shryer* v. *Morgan*, 77 Ind. 479; *Junk* v. *Barnard*, 99 Ind. 137.

In the last case cited, the defendant appealed, and it was held that damages assessed by the jury on the basis of the purchase-money with interest were not excessive.

None of the cases cited by counsel are analogous to this case.

In the case of *Martin* v. *Merritt.* 57 Ind. 34, it was held that the measure of damages, on account of the failure of the wife to convey, was the value of her interest in the real estate. See *Worth* v. *Patton, Admr.*, 5 Ind. App. 272, 31 N. E. Rep. 1130.

There is a distinction between actions to recover damages for breach of a contract which can not be enforced, and on valid contracts. In the first class of cases, the measure of damages is the purchase price or value of services, and in the other the actual damages or value of property may be recovered.

Counsel also contend that in other jurisdictions the great weight of authority support the proposition that in such cases the measure of damages for the failure of title, arising out of contract to convey, in the absence of fraud, is the value of the purchase price, and not the value of the land.

Among the decisions cited and relied upon is the case of *Tracy* v. *Gunn*, 29 Kan. 508, in which Judge BREWER says: "If it were an original question, we think that the doctrine announced in that case (*Liston* v. *Batson*, 6 Kan. 420), and the various cases which it follows, might well be criticised; for why should the good faith of the vendor diminish the actual damages which the vendee has sustained by reason of the breach of the contract?"

To undertake to discuss all the questions so ably presented, and to review and analyze all the authorities cited by the learned counsel in their excellent and exhaustive petition and brief,—would unduly extend the limits of this opinion.

Although we have carefully considered, and have been much impressed with the earnest and ingenious argu-

ment of counsel, we are not able to agree with them as to the law applicable to this case. It is not so difficult, ordinarily, to determine what the principles of the law are, as it is to make the correct and proper application thereof to a given state of facts.

The general rule deducible from the decision on which our conclusion is based is that when the vendor has made a sale under the belief that he had title, and it is found that he can not make title, the measure of damages is the purchase price with interest, but if the vendor—knowing that he has not in himself a perfect or complete title, under the expectation that he can get the title, or that his wife will join with him in the conveyance—agrees to sell and convey real estate, and is disappointed in failing to secure the title or by his wife refusing to join with him in the conveyance, he is liable in damages, though he acted in good faith, for the value of the lands or the interest therein which he fails to convey. *Dustin v. Newcomer*, 8 Ohio, 49, and notes and authorities cited herein and in original opinion.

An opinion as to the law must be construed with reference to the facts on which it is based. All that is necessary for us to decide in this case is to determine the principles applicable to the facts before us, and it will suffice to say that on the facts alleged in the second paragraph of the complaint we adhere to the opinion that, under the terms of the contract, Henry Puterbaugh became and was liable to convey the entire eighty acres to Horace, and that because of the failure to so convey, under the circumstances therein alleged, his estate is responsible in damages for the value of the interest of his wife Margaret, which Horace has not, on full compliance on his part, been able to secure.

The petition for rehearing is, therefore, overruled.

Filed June 24, 1893.