Paul LARGE, Naomi Large, Appellants (Plaintiffs Below),

v.

Melvin B. GREGORY, Edward L. Frickey, Jr., Individually and as Agent for Metropolitan Real Estate Corp. and Metropolitan Real Estate Corp., Appellees (Defendants Below).

No. 2–1279A379.

Court of Appeals of Indiana, Second District.

March 19, 1981.

Richard L. Langston, Frankfort, for appellants.

Robert S. Laszynski, Lafayette, for appellees.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Plaintiffs-appellants Paul and Naomi Large (the Larges) appeal from a judgment on the evidence entered in favor of defendants-appellees Melvin B. Gregory (Gregory), Edward L. Frickey (Frickey), and Metropolitan Real Estate Corporation (Metropolitan) on the issues of actual and punitive damages in the Larges' action for breach of contract and fraudulent misrepresentation, claiming that the evidence warranted submission of those issues to the jury.

We affirm.

## FACTS

The record discloses that in October, 1978, the Larges, who wished to buy a home under contract, contacted Metropolitan. On October 9 or 10, Frickey, a real estate salesman employed by Metropolitan, showed Gregory's home, located at 203 North Plank Street, Rossville, to the Larges. Frickey also gave the Larges a "listing brochure"—a leaflet containing a photo of the house and information concerning it, including the following: "Heat Gas Cost $300."

The Larges decided to buy Gregory's house. On October 15, the Larges, Gregory, and Frickey (as agent of Metropolitan) executed an "Offer to Purchase Real Estate" (offer). The offer set forth a purchase price of $18,500. The Larges were to pay $100 as earnest money, $3600 as a down payment, and the balance of the purchase price ($14,900) under the terms of a land contract at 8½%. Paragraph 4 added the following terms to the offer: "Buyer will assume current contract. This offer is contingent upon buyers herein being able to obtain a down payment in the amount of $3,600.00."

As suggested by the language of Paragraph 4, Gregory himself was purchasing the house under a land contract. Metropolitan and Frickey knew that the consent of Max Calloway (Calloway), Gregory's seller, was a prerequisite to the effectiveness of an assignment by Gregory of his contract. There was conflicting testimony as to whether the Larges understood this condition.[1]

After signing the offer, the Larges gave Gregory a check for $100 [2] and proceeded to borrow money to make the down payment. Mr. Large testified that he obtained approximately $1500 from Midland Guardian, $600 from Indiana Financial, $1500 from Hook's Credit Union, and $1000 from Beneficial.[3] Later, according to Mr. Large, Frickey informed Mrs. Large that Calloway's consent to the assignment could not be obtained.

The Larges' complaint followed, in which they alleged breach of contract and fraudulent misrepresentation and requested $3000 actual damages and $50,000 punitive damages.

At trial Mr. Large testified that the cost of heating his present home during the previous winter had been roughly $900.

Richard Coapstick (Coapstick), vice-president of The Farmers Bank, Frankfort, testified on behalf of the Larges that the conventional mortgage loan rate was 9½% on October 15, 1978. Coapstick calculated that payment of the balance of the contract price at 9½% (the customary rate) rather than 8½% (the rate specified by the offer) would have required the expenditure of an additional $2,162.16.

---

1. There was further disagreement concerning whether Frickey instructed the Larges to borrow the $3600 down payment or merely to obtain commitment letters from lending institutions.

2. The check was later returned to the Larges uncashed.

3. The Larges intended to use the additional $1000 to build a fence around the property.

At the close of the Larges' case, the trial court granted the defendants' motion for judgment on the evidence on the issue of actual damages. At the close of the defendants' case, the trial court sustained their motion for judgment on the evidence on the issue of punitive damages, concluding that unless actual damages have been sustained, punitive damages cannot be awarded.

### ISSUES

The Larges raise two issues:

1. Did the trial court err in granting judgment on the evidence in favor of the defendants on the issue of actual damages?

2. Did the trial court err in granting judgment on the evidence in favor of the defendants on the issue of punitive damages?

### DECISION

#### I.

*PARTIES' CONTENTIONS*—The Larges maintain that judgment on the evidence was improper because they proved three types of actual damages. Specifically, they claim to be entitled to recover (1) $2,162.16, the additional amount which Coapstick testified would be required to pay off the balance of the purchase price at 9½% instead of 8½%; (2) $600, the difference between the cost of heating the Larges' home ($900 according to Mr. Large) and the cost of heating Gregory's home ($300 according to the "listing brochure"); and (3) an unspecified amount representing the interest which the Larges paid on the $4600 loan. In the alternative, the Larges argue that even if they are not entitled to actual damages, the trial court should have assessed nominal damages. Defendants respond that the Larges offered insufficient proof of actual damages and the trial court's failure to award nominal damages cannot serve as a basis for reversal.

*CONCLUSION*—The trial court did not err in granting judgment on the evidence in favor of the defendants on the issue of actual damages. Furthermore, the trial court's failure to assess nominal damages does not warrant reversal.

In reviewing the trial court's ruling on a motion for judgment on the evidence, this court must consider only the evidence and reasonable inferences most favorable to the non-moving party. *Killebrew v. Johnson* (1980), Ind.App., 404 N.E.2d 1194; *Ortho Pharmaceutical Corp. v. Chapman* (1979), Ind.App., 388 N.E.2d 541. Judgment on the evidence in favor of the defendant is proper when there is an absence of evidence or reasonable inferences in favor of the plaintiff upon an issue in question. The evidence must support without conflict only one inference which is in favor of the defendant. *Palace Bar, Inc. v. Fearnot* (1978), Ind., 381 N.E.2d 858; *Arnold v. Parry* (1977), Ind.App., 363 N.E.2d 1055. If there is any probative evidence or reasonable inference to be drawn from the evidence, or if there is evidence allowing reasonable people to differ as to the result, judgment on the evidence is improper. *Keck v. Kerbs* (1979), Ind.App., 395 N.E.2d 845; *Arnold, supra.*

With these rules in mind, we turn to the applicable measure of damages in this case. We examine first the measure of damages for breach by the seller of his contract to sell land.

Courts are divided over the proper standard for assessing damages in cases of total breach by the seller of his agreement to convey real property. In jurisdictions following the "American" rule, the buyer is entitled to recover ordinary contract damages, measured by the difference between the contract price and the market value of the land, together with any part payments of the price. *See generally* 5 A. Corbin, Corbin on Contracts § 1098 (1964); C. McCormick, Handbook on the Law of Damages § 177 (1935). Jurisdictions accepting the "English" rule generally limit the buyer's recovery to his down payment plus interest and reasonable expenses incurred in investigating the title; only if the seller has acted in bad faith or has assumed the risk of a failure to secure title will he be liable for ordinary contract damages. McCor-

mick, *supra*, §§ 178–79. *See also* Corbin, *supra*, § 1098.

■ Indiana courts appear to have adopted the "English" rule. *See Sheets v. Andrews* (1829), 2 Blackf. 274; *Blackwell v. Board of Justices* (1828), 2 Blackf. 143. Thus, the courts generally have restricted the buyer's recovery to the amount of the purchase price paid with interest, *e. g., Junk v. Barnard* (1884), 99 Ind. 137; *Huff v. Lawlor* (1873), 45 Ind. 80; *Adamson v. Rose* (1868), 30 Ind. 380, awarding ordinary contract damages only when the seller has acted in bad faith, *e. g., Case v. Wolcott* (1870), 33 Ind. 5, or impliedly assumed the risk of an inability to secure title, *e. g., Puterbaugh v. Puterbaugh*, 7 Ind.App. 280, 33 N.E. 808, *rehearing denied*, (1893), 7 Ind. App. 280, 34 N.E. 611. Nevertheless, language in *Puterbaugh, supra*, suggests the applicability of the "American" rule to certain categories of cases. For purposes of this appeal, we need not scrutinize the decisions to ascertain the Indiana rule; applying either standard—"English" or "American"—to the evidence presented in this case, we must conclude that the damages which the Larges seek are not compensable.

Under the "English" rule, the Larges would be entitled to recover their down payment plus interest and, perhaps, expenses incurred in investigating title. If, however, the defendants had acted in bad faith or assumed the risk of a failure to secure title, the Larges would be entitled to recover ordinary contract damages. It is true that the Larges gave Gregory a check for $100 earnest money. Mr. Large testified, however, that the check was returned uncashed. The Larges presented no evidence of lost interest on the $100 or of title search costs. And assuming for the sake of argument that the defendants so conducted themselves as to incur liability for ordinary contract damages, the Larges produced no evidence whatsoever of the market value of the property.

The result under the "American" rule would be the same as the one reached under the "bad faith/assumed risk" corollary to the "English" rule: The Larges, having failed to offer evidence of the market value of the property, would be unable to recover ordinary contract damages. In short, regardless of the proper measure of damages, the Larges forfeited their right to actual damages under a breach of contract theory by failing to submit appropriate evidence.

■ Nor are actual damages recoverable under a theory of fraudulent misrepresentation. Our supreme court has indicated that in an action for fraud inducing a party to enter into a contract to buy property, the defrauded purchaser may recover the difference between the true value of the property and its value as represented by the seller. *Nysewander v. Lowman* (1890), 124 Ind. 584, 24 N.E. 355; *Sriver v. Maley* (1958), 128 Ind.App. 619, 151 N.E.2d 518. *See generally* Annot., 13 A.L.R.3d 875 (1967). The rule applies to cases in which the plaintiff has *received* property which proves to be worth less than the consideration paid. We find no authority—and neither party has directed us to any—setting forth the measure of damages in a fraudulent misrepresentation action such as this one, in which the plaintiff has not received property. Furthermore, assuming *arguendo* that the above-mentioned measure of damages applied under the facts of this case, the Larges presented no evidence as to the true value of the property.

■ In view of the preceding discussion, we conclude that the trial court did not err in granting judgment on the evidence for the defendants on the issue of actual damages; the record is devoid of competent evidence or reasonable inferences in favor of the Larges on that issue. The trial court's failure to assess nominal damages does not call for a different conclusion. In the first place, at no time prior to the filing of their appellant's brief did the Larges allege as error the trial court's failure to award nominal damages. New grounds for relief may not be raised for the first time on appeal. *See Hormuth Drywall & Painting Service, Inc. v. Erectioneers, Inc.* (1978), Ind.App., 381 N.E.2d 490; *Chambers v. Boatright* (1961), 132 Ind.App. 378, 177 N.E.2d 600. And even if the issue were properly before this court, reversal

would be precluded under the rule that a judgment will not be overturned for failure to award nominal damages. *E. g., Smith v. Parker* (1897), 148 Ind. 127, 45 N.E. 770; *Rauch v. Circle Theater* (1978), Ind.App., 374 N.E.2d 546.

## II.

In view of our conclusion on the issue of actual damages, we find that the trial court did not err in granting judgment on the evidence in favor of the defendants on the issue of punitive damages; as this court has indicated, a party must establish actual damages in order to recover punitive damages. *Newton v. Yates* (1976), Ind. App., 353 N.E.2d 485. *See generally* 25 C.J.S. *Damages* § 118 (1966).

Judgment affirmed.

SHIELDS and SULLIVAN, JJ., concur.